TLB PLASTICS CORPORATION, INC., Appellant (Third–Party Defendant Below),

v.

The PROCTER AND GAMBLE PAPER PRODUCTS COMPANY; the Procter and Gamble Company; Procter and Gamble Distributing Company; and Tulox–Lumelite–Bradley, Division of Richardson–Merrell, Inc., Appellees (Defendants and Third and Fourth–Party Plaintiffs Below).

No. 52A02–8804–CV–139.

Court of Appeals of Indiana, Third District.

Sept. 5, 1989.

Rehearing Denied Oct. 12, 1989.

Robert D. Maas, Mark R. Smith, Jennings, Maas & Stickney, Indianapolis, for appellant.

Evan E. Steger, Ice, Miller, Donadio & Ryan, Indianapolis, for appellees The Procter & Gamble Paper Products Co., The Procter & Gamble Co., Procter and Gamble Distributing Co.

Robert A. Smith, Michael S. Huntine, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for appellee Tulox–Lumelite–Bradley, Div. of Richardson–Merrell, Inc.

HOFFMAN, Judge.

TLB Plastics Corporation, Inc. (TLB) brings an interlocutory appeal from the denial of its motion for summary judgment. TLB asserts that it is entitled to judgment as a matter of law on the claims for indemnity raised by The Procter and Gamble Paper Products Company, The Procter and Gamble Company and Procter and Gamble Distributing Company (Procter and Gamble) and by Tulox–Lumelite–Bradley, Division of Richardson–Merrell, Inc. (RMI).

The facts relevant to this appeal are summarized as follows. In 1977, Procter and Gamble entered into a contract with RMI whereby RMI agreed to manufacture and sell, and Procter and Gamble agreed to buy, a certain quantity of plastic devices for use in a product marketed by Procter and Gamble. As a part of the agreement, post-former machines essential to the manufacturing process were built for RMI. The post-former machines were owned by Procter and Gamble, although RMI retained possession for the duration of the contract. The agreement contained a provision for indemnity with respect to injuries attributed to the post-former machines:

"Subject to paragraph 10(e) hereof, Seller [RMI] agrees to assume sole responsibility for the installation, maintenance, and operation of Buyer's [Procter and Gamble's] post-former machines which are installed at Seller's facilities for the manufacture of the commodities specified hereunder. Seller agrees to indemnify and hold harmless Buyer, its affiliates, employees, and agents from all losses, damages and expenses resulting from any claim or action for injury to persons or damage to property or action by any regulatory agency arising out of or in any way associated with the installation, maintenance and operation of said equipment unless such losses, damages or expenses are contributed to by the sole or willful negligence of the Buyer."

In March of 1979, TLB purchased the business of RMI. The purchase agreement contained the following paragraph:

"As partial consideration for the TLB BUSINESS, the TLB ASSETS and the ANCILLARY PROPERTY, PLASTICS [TLB] upon Closing hereunder agrees to perform RMI's obligations under the contracts, leases, commitments, and agreements listed on Schedule E hereto ... and all similar contracts, leases, commitments, and agreements entered into by RMI in the ordinary course of business and in compliance with the terms hereof...."

As the contract between Procter and Gamble and RMI was listed on Schedule E, TLB assumed RMI's obligation to manufacture and sell plastic devices to Procter and Gamble.

On May 31, 1980, Catherine Nelson, an employee of TLB, was allegedly injured while operating one of the post-former machines. Nelson and her husband filed a complaint against Procter and Gamble alleging negligence, breach of warranty and strict liability. Procter and Gamble brought a third-party complaint for indemnity against RMI. RMI, in turn, filed a fourth-party complaint for indemnity against TLB. Procter and Gamble then amended its third-party complaint to add TLB as a defendant on the grounds that TLB had assumed RMI's obligation to indemnify Procter and Gamble. TLB moved for summary judgment, the denial of which prompted this appeal.

Two issues are raised on appeal:

(1) whether TLB is entitled to judgment as a matter of law on the complaints for indemnity arising from the Nelsons' breach of warranty claim, because a claim for breach of implied warranty in tort is duplicitous of a claim for strict liability; and

(2) whether TLB is entitled to judgment as a matter of law on the complaints for indemnity arising from the Nelsons' product liability claim, because TLB's purchase agreement with RMI indicated that TLB would not assume the obligation to indemnify under the circumstances present in the instant case.

For its first appellate contention, TLB argues that Procter and Gamble has no claim for indemnity arising from the Nelsons' allegations of tortious breach of implied warranty, because Procter and Gamble could incur no liability under that count of the Nelsons' complaint. TLB's argument accurately states the law.

 The theory of implied warranty in tort has been superseded by the theory of strict liability. *Fruehauf Trailer Div. v. Thornton* (1977), 174 Ind.App. 1, 9, 366 N.E.2d 21, 28. Tortious breach of implied warranty forms the theoretical basis for the strict liability rule adopted in Indiana,

but it does not constitute a separate cause of action.

> *Withers v. Sterling Drug, Inc.* (S.D.Ind. 1970), 319 F.Supp. 878, 883;
>
> *see also Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 578 (theory of breach of implied warranty in tort now merged with theory of strict liability).

Accordingly, Count II of the Nelsons' complaint, alleging tortious breach of implied warranty, fails to state a distinct cause of action upon which the Nelsons could recover from Procter and Gamble.

Because Procter and Gamble could not be found to be liable under Count II of the Nelsons' complaint, it had no claim for indemnity based on that count. *See Coca–Cola Bottling Co.–Goshen v. Vendo Co.* (1983), Ind.App., 455 N.E.2d 370, 374. RMI's claim for indemnity under Count II, which was contingent upon Procter and Gamble's indemnity claim, likewise falls. TLB is entitled to judgment as a matter of law on the complaints for indemnity arising from the Nelsons' breach of warranty claim.

■ TLB next asserts that it is entitled to summary judgment on the complaints for indemnity arising from the Nelsons' product liability claim. According to TLB, its purchase agreement with RMI expressly provided that TLB would not assume the obligation to indemnify under the circumstances which gave rise to the Nelsons' claim for damages on the theory of strict liability. The following contractual provisions are deemed significant by TLB:

> "PLASTICS [TLB] shall not assume or be responsible for any liability or obligation *arising out of any breach or failure to perform by RMI* prior to the Closing [March 30, 1979] under any contract, lease, commitment, or agreement....
>
> In no event shall PLASTICS assume or incur any liability or obligation under this provision or otherwise under this Agreement with respect to any claim,

regardless of when made or asserted, which arises out of or is based upon any express or implied representation, warranty, agreement or guarantee made by RMI or alleged to have been made by RMI or which is imposed or asserted to be imposed by operation of law, *in connection with any product shipped by RMI or for any service performed by RMI* on or prior to the Closing Date.... In addition to the foregoing, in no event shall PLASTICS assume or incur any liability or obligation under this provision or otherwise under this Agreement (i) to the extent that such liability or obligation *relates to the period prior to the Closing* and is covered by a policy or policies of insurance issued to or for the benefit of RMI...." [Emphasis added.]

TLB initially attempts to bring the complaints for indemnity arising from the Nelsons' product liability claim under the blanket disclaimer for obligations "relat[ing] to the period prior to the Closing [March 30, 1979]." To develop its argument, TLB presents three premises: 1) liability for the alleged defects in the post-former machines arose at the time the machines were placed into the stream of commerce; 2) RMI's obligation to indemnify Procter and Gamble for damages attributable to the post-former machines also accrued at the time the machines were placed into the stream of commerce; and 3) the post-former machines were placed into the stream of commerce prior to March 30, 1979. TLB then concludes that, under the terms of the purchase agreement, there was no assumption of RMI's obligation to indemnify Procter and Gamble.

■ TLB's argument fails, because its second premise is not a correct statement of the law. The obligation to indemnify does not arise until the party seeking indemnity suffers loss or damages; that is, at the time of payment of the underlying claim, payment of a judgment on the underlying claim, or payment in settlement of the underlying claim.[1]

---

1. Indiana Rules of Procedure, Trial Rule 14 permits a claim for indemnity to be litigated contemporaneously with the injured party's claim, but the rule in no way suggests that the obligation to indemnify arises before the indemnity claimant suffers loss.

*Cf. Coca–Cola Bottling Co–Goshen, supra,* 455 N.E.2d at 373 (One of the elements of a claim for indemnity is that the claimant has paid or been compelled to pay a judgment recovered by the injured person);

Annot., 57 A.L.R.3d 867, 884 (1974) (statute of limitations on indemnity claim does not start to run until party seeking indemnity suffers loss or damage).

RMI's obligation to indemnify Procter and Gamble, if such an obligation is found to exist, did not accrue at the time the post-former machines were placed into the stream of commerce, because Procter and Gamble had suffered no loss at that point. Consequently, the indemnity claim may not be characterized as an obligation incurred prior to March 30, 1979. The blanket disclaimer contained in the purchase agreement between RMI and TLB is inapplicable.

TLB next contends that the indemnity complaints arose in connection with a product shipped or service performed by RMI, for which TLB disclaimed all responsibility under the terms of the purchase agreement. Specifically, TLB maintains that the post-former machine which is the subject of the Nelsons' complaint constitutes a product shipped by RMI.

■ Indemnity agreements are contracts subject to the rules and principles of contract construction. *Kruse Classic Auction v. Aetna Cas. and Sur.* (1987), Ind.App., 511 N.E.2d 326, 328. For example, if the words of an indemnity agreement are clear and unambiguous, they are to be given their plain and ordinary meaning. *See Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170, 1172. The contractual language which forms the basis for TLB's contention that it has no indemnity obligation is unambiguous. The phrase "product shipped" must be given its plain and ordinary meaning, a meaning which does not encompass the post-former machines.

■ The post-former machines installed at RMI's facility were not products manufactured by RMI for delivery elsewhere.

The machines were used in a manufacturing process whereby plastic devices were produced for shipment to Procter and Gamble. The fact that Procter and Gamble purchased the machines through RMI and held certain rights to recall the equipment would not render the post-former machines "products shipped." Contrary to TLB's assertion, the indemnity complaints did not arise in connection with a product shipped by RMI for which TLB had disclaimed responsibility.

■ Lastly, TLB maintains that it did not assume an obligation to indemnify, because the obligation arose out of a breach of contract by RMI. According to TLB, a breach of contract occurred when RMI sold an allegedly defective post-former machine to Procter and Gamble. Presumably, TLB is proceeding on the theory that RMI breached an implied warranty of merchantability or fitness for a particular purpose. *See* IND.CODE §§ 26–1–2–314 and 26–1–2–315 (1988 Ed.). Yet TLB has marshalled no evidence, either disputed or undisputed, to demonstrate a breach of implied warranty. It cannot be said as a matter of law that the indemnity claims of Procter and Gamble and RMI arose from a breach of contract for which TLB had expressly disclaimed responsibility.

TLB is entitled to summary judgment on the indemnity complaints arising from the Nelsons' tortious breach of warranty claim. However, the lower court properly denied TLB's motion for summary judgment with respect to the indemnity complaints arising from the Nelsons' product liability claim. The trial court's judgment is, therefore, affirmed in part and reversed in part.

ROBERTSON and CONOVER, JJ., concur.