John J. BALVICH, Arlene Balvich, Jordan Balvich and Beth Balvich, Appellants–Defendants,

v.

Stephen C. SPICER and Maureen Spicer, Appellees–Plaintiffs.

No. 37A03–0803–CV–101.

Court of Appeals of Indiana.

Sept. 29, 2008.

236

David A. Rosenthal, Lafayette, IN, Attorney for Appellants.

John T. Casey, Rensselaer, IN, Attorney for Appellees.

**OPINION**

BAKER, Chief Judge.

Appellants-defendants John, Arlene, Jordan, and Beth Balvich (collectively, the Balviches) appeal the trial court's judgment entered in favor of the appellees-plaintiffs Stephen and Maureen Spicer (the Spicers) regarding the Spicers' claim against them for contribution on various deficiency judgments that had been entered against the Spicers. Specifically, the Balviches argue that the Spicers' action against them was barred by the statute of limitations, that joint and several liability should not have attached, and that the Spicers erroneously obtained a judgment against them with regard to tax liabilities of the various business entities because the Indiana Tax Court had exclusive jurisdiction over such matters. Finding no error, we affirm the judgment of the trial court.

## FACTS

Dr. James Balvich (Dr. Balvich) and several of his family members owned and operated various Hardee's Restaurant franchises in Indiana. More specifically, the business named Group Management, Inc. (GMI), owned and operated a Hardee's in Rensselaer, Group Management II operated the Hardee's in Middlebury, and Group Management III engaged in business in Remington. Each restaurant was separately incorporated, and the distinct corporate entities did not share common ownership.

At some point, Dr. Balvich asked the Spicers to participate in the business. After agreeing to do so, the Spicers jointly owned 25% of GMI, 50% of Group Management II, and 16.55% of Group Management III. Beth and Jordan Balvich jointly owned a 5% interest in GMI and a 5.34% combined interest in Group Management III. However, neither Beth nor Jordan actively participated in the operation of the businesses.

Dr. Balvich was the president of the GMI entities beginning in October 1991, and Stephen served as the treasurer of all three corporations. GMI borrowed $700,000 from Bank One in Rensselaer as a small business loan. Several of the Balviches and the Spicers personally guaranteed the loan on October 15, 1991.

At some point, the corporate Board of Directors, which consisted of Balvich family members, voted Stephen out of office after he questioned some financial dealings. The businesses began to fail, and during the summer of 1995, John and Beth Balvich and the Spicers took control of the corporate records in an attempt to salvage the businesses. Dr. Balvich eventually left Monticello and relocated his medical practice to South Carolina. As a result, the Spicers and John and Arlene Balvich became the shareholders who operated the three businesses.

GMI ultimately defaulted on the loan and Bank One filed an action to foreclose the mortgage liens on the property that secured the loan. After Bank One obtained judgment on November 8, 1996, the properties were sold through a Sheriff's sale on May 21, 1997, which resulted in a deficiency judgment in the amount of $199,000. The judgment was entered against all guarantors jointly and severally.

Four of the guarantors were released because of bankruptcy proceedings, and no service was ever obtained on Joann Balvich. On January 14, 2002, the Spicers obtained a release of the judgment following their payment to Bank One in the sum of $152,500.

On July 9, 1998, John and Arlene Balvich paid $5000 to obtain a release from Bank One, and Jordan and Beth Balvich also paid $5000 to obtain a release on judgment.

Group Management II had obtained its financing from AT & T Financial Corporation (AT & T). After that loan went into default, a judgment was entered against Group Management II in a New Jersey court in the amount of $247,998.57. Thereafter, AT & T registered its judgment in Indiana. The Spicers paid AT & T $60,000 on September 13, 1997, and obtained a release of the judgment. AT & T also released John and Arlene Balvich after they paid the sum of $15,000.

The Indiana Department of Revenue (Department of Revenue) sought payment of Trust Withholding Tax Accounts that were for sales tax and employee withholding taxes. The Spicers paid the State the sum of $75,182 to satisfy the obligations of the businesses. The Department of Revenue entered a finding declaring that the

Spicers were the responsible parties for paying the taxes.

On February 13, 2004, the Spicers instituted an action against the Balviches for contribution for the $152,500 payment to Bank One, the $60,000 payment to AT & T, and the $75,182 payment to the Department of Revenue.

Following the trial, which commenced on October 19, 2007, the trial court took the matter under advisement. The parties were ordered to submit proposed findings of fact and conclusions of law, and on December 26, 2007, the trial court entered judgment for the Spicers and issued the following findings:

### FINDINGS OF FACT

The evidence at trial showed that on July 9, 1998, John and Arlene Balvich paid ... $5,000 to gain a release from Bank One; Jordan and Beth Balvich paid ... $5,000 to gain a release from Bank One on the deficiency judgment previously entered. It was represented by the parties at trial that no one conveyed that information to Stephen or Maureen Spicer.

. . .

Further, the Court finds that A.T. & T. entered a release of judgment against John and Arlene Balvich in which John and Arlene Balvich paid to A.T & T the sum of ... $15,000.

. . .

### CONCLUSIONS OF LAW

The Court finds that there are three issues to be decided:

First, what statute of limitations controls the actions before the Court for the purposes of an action on contribution, and when does the time on that particular action begin to run.

Second, are the Spicers entitled to contribution from the other guarantors and shareholders within the particular corporation; and

Third, are the Spicers entitled to contribution from the remaining shareholders, John and Arlene Balvich, for the payment of Indiana trust account taxes.

[T]he Court makes the finding that it makes no difference whether the Court determines whether the six (6) year statute applies or the ten (10) year statute because of the following reasoning: Steve and Maureen had no right to seek contributions from any of the Defendants until such time as they had been forced to pay sums of money to Bank One to satisfy the obligation under [GMI's] ... $700,000 loan and deficiency of ... $199,000 plus. Until they had been forced to pay certain sums of money and until Bank One had released them of obligations thereunder, they had no right to ask for contributions since that contribution could not be established with any certainty until they had been released from any obligations by Bank One.

The Court finds that that release by Bank One was filed with the Court on January 14, 2002. Therefore, whether the Court applies the ten ... year statute or the six ... year statute, neither is of a concern since as to that litigation the Spicers' right to ask for contribution in which they were no longer liable to Bank One was established by court order on January 14, 2002.

As a side note, the Court finds that the statute of limitations on the judgment entered in which contribution is requested by implication would be a ten (10) year statute as it would apply to those seeking contribution. As previously stated, the Court finds that it is of

no materiality since the release was obtained within either of the statutes.

. . .

The Court further notes that the guarantee that was executed by the parties in this matter was a joint and several obligation, and the judgment entered by Bank One was a joint and several obligation.

As to the Defendant[s'] argument that this matter is based on the promissory note existing by and among John, Arlene, Jordan, Beth, Steve, and Maureen, the Court finds that the promissory note does not exist as between those parties; but that the promissory note exists as between Bank One and [GMI]. There is no "bill of exchange" existing between the parties with Bank One.

It is further obvious to this Court this is not an action for breach of contract as there is no contract between the Spicers and either Balvich family.

Therefore, the Court finds in the Bank One litigation and the A.T. & T. litigation, the Spicers were within the statute of limitations as previously determined by this Court, and therefore finds that they may proceed with this litigation and the Court must proceed with further analysis of this matter.

Plaintiff has directed the Court to I.C. 26–1–3.1–116 which provides, in part "a party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability, contribution, and according with applicable law. Discharge of one party having joint and several liability by a person entitled to enforce the instrument does not affect the right under subsection (b) of a party having the same joint and several liability to receive contribution for the party discharged." The Court notes that the two judgments entered in this matter were entered with joint and several liability against all parties before the Court. All of the parties involved in these investments are not responsible because of certain members of the group receiving discharge in bankruptcy, or as in one case, secreting herself to avoid service to become a part of the litigation, thus switching the burden to the six . . . parties appearing before the Court.

The statute cited above has an exception found in Section 419(e) which defines and applies the "principle of an accommodating party." Thus, the litigants before this Court are accommodation parties or accommodating parties. The Court finds that by applying the facts of this case, the parties before it are accommodation parties. Therefore, an accommodated party may seek reimbursement for another accommodated party. This assumes that there is no other agreement between the parties. This Court was not advised that there were any other agreements; therefore, accommodation parties who pay an instrument are entitled to be reimbursed from an accommodated party and accommodation party.

In this case, the Defendants seem to want this Court . . . to divide any payment on the basis of a percentage of interest each stockholder may have in the business enterprise. This might have some rational application if . . . all of the parties to the enterprise were before the Court, but they are not, as was previously pointed out by this Court, or in the case of John and Arlene Balvich, give them credit for other obligations that they have paid on debts incurred by the business ventures. The Balviches testified that they gave free advertising to some creditors of the group because they felt they were obli-

gated to do so. This is an [admirable] moral decision but does not rise to the level of being a set off against a liability that the Plaintiffs have requested, nor is the promissory note that John paid off and co-signed with his brother an obligation which would be set off against the obligations before this Court. Debts that were paid are not debts that the Spicers were liable on and, therefore, should not be considered as a set-off against any other payments that they were required to pay.

Defendants also argue that Jordan and Beth Balvich should only be responsible for the debt, if any, on the basis of their interest in the business venture. The Plaintiffs are seeking contribution payment based on a Bank One loan, the loan guarantees, and the deficiency judgment entered against the loan guarantors. The documents before the Court do not show that any party was only responsible for that portion of the debt guaranteed in relation to their percentage of ownership. It is clear that the guarantee was unrestricted. Therefore, this Court finds that the Plaintiffs have a right of contribution against John and Arlene Balvich and Jordan and Beth Balvich on the sums paid to Bank One.

On the issue of the A.T. & T. lease, the decision on that issue is the same. Steven and Maureen, John and Arlene are all judgment debtors, jointly and severally on the obligations and, therefore, must share equally in the amounts that were paid.

Further, the Court finds that each of the Defendants are jointly and severally obligated in this matter. Therefore, the Court will calculate any judgment entered in this matter to be equally shared by the parties.

The issue of the contribution to be shared between John and Arlene Bal-

vich and Jordan and Beth Balvich and Steve and Maureen Spicer is as follows: Steve and Maureen Spicer are entitled to contribution and a judgment entered in favor of Stephen and Maureen Spicer against John Balvich, Arlene Balvich, Jordan Balvich, and Beth Balvich, in the sum of ... $108,332. Said judgment shall be entered jointly and severally against said Defendants. This is calculated by adding ... $152,500 plus $5,000 plus $5,000 for a total of ... $162,500. Equal contributions would be one-third of ... $162,500, or $54,166 per guarantor. Therefore, as against Jordan, Beth, John, and Arlene the total would be $108,332.

On the issue of the A.T. & T. judgment, the total settlement ... was $75,000. Therefore, on the issue of contribution, John and Arlene Balvich should have judgment entered against them for the sum of $22,500, giving them credit for the $15,000 John and Arlene Balvich have already paid.

As to the issue of payment of sums to the State of Indiana regarding withholding tax and sales tax, the Court finds that Stephen Spicer was required to pay the State of Indiana, Department of Revenue, the sum of $75,182 in trust account taxes which were assessed against Group Management entities.

The Court finds that this Court has jurisdiction over the issues before it, which is a contribution for the payment of taxes, and the Indiana Tax Court does not have jurisdiction and is not afforded jurisdiction by its enacting statute.... The Indiana Tax Court's jurisdiction is limited to matters which involve the initial appeal of final determinations made by taxing authorities, including the Indiana Department of Revenue. This action is not such an appeal. Therefore,

the Court finds that it has jurisdiction over these matters.

As to the Indiana Department of Revenue count in the Complaint, the Court finds that the Indiana Department of Revenue had determined Stephen Spicer is a responsible party for the payment of Indiana Trust Account taxes ... for the corporate entities.... The Indiana Department of Revenue determined John and Arelene Balvich are not responsible parties with responsibility for the trust account taxes stated above. The Court further finds that I.C. 6–3–4–8 provides that a corporate employee/officer who is under duty to deduct and remit trust account taxes shall be personally liable for such taxes, penalties, and interest. Further, the Court concludes that as a matter of law, the Indiana Department of Revenue's findings are not res judicata by and among the parties as neither party was involved in either of the party's administrative proceedings wherein the Indiana Department of Revenue made the findings and determinations. The Court further finds, determines, and concludes that the Indiana Department of Revenue findings are not binding on this Court.... No party is challenging the assessment or the collection of any tax. The taxes have been assessed and paid.

Further, the Court finds that the Indiana Department of Revenue findings, as it pertains to Arlene Balvich, is not in accordance with the evidence produced at trial. The Indiana Department of Revenue had determined that Arlene Balvich was not an officer responsible for the remittance of trust tax to the State of Indiana. The uncontradicted evidence presented to this Court through witnesses sworn at trial and documents, including corporate records and the corporate certified public accountant, was that Arlene Balvich was

the corporate officer who had the responsibility to file sales tax returns, Indiana Withholding returns, to pay those trust accounts. Therefore, this Court concludes as a matter of law that Arlene Balvich is liable for a contribution to Stephen Spicer on the payment of taxes in this matter.

Further, the Court finds that Arlene Balvich and Stephen Spicer were involved in a similar relationship in that Stephen Spicer was the president of the corporation and Arlene Balvich was the financial officer in charge of the checkbook, paying of corporate obligations, and the payment and filing of tax returns. The certified public accountant for the corporation testified that he advised all parties that the payment of taxes should be the first priority of the corporation, and the corporate officers could be held responsible for the payment of those taxes if they were not paid timely. It is also clear from the evidence that Arlene Balvich knew that her failure to pay said taxes and file returns would result in some corporate officer, employer, director being held responsible for the payment of those taxes. The Court finds that Arlene Balvich was the corporate officer in charge of the Indiana Trust Account taxes; therefore stands in a fiduciary relationship with the State of Indiana. The Court finds that the issue before this Court as to the payment of those taxes is not whether Arlene Balvich should be required to pay all the taxes that were incurred, but whether or not she should be held responsible for her contribution because of her breach of fiduciary duty to the State of Indiana and the other shareholders.

Further, the Court finds there was no evidence introduced at trial that the corporations in this matter did not have the money to pay sales tax and Indiana

withholding tax. The Court is aware that the sales tax represents money which had been collected by the business entities and that the withholding taxes were monies withheld from employee's salaries and retained by the corporation. Therefore, the Court finds that Stephen Spicer may maintain a right of contribution against Arlene Balvich for the payment of that obligation.

Therefore, the Court finds that Stephen Spicer should be awarded a judgment against Arlene Balvich in the sum of ... $37,591 which would be an equal contribution to the taxes paid.

### JUDGMENT

The Court now enters judgment in favor of Stephen Spicer and Maureen Spicer on the issue of contribution in the sum of ... $108,332 and against John Balvich, Arlene Balvich, Jordan Balvich, and Beth Balvich. Said judgment shall be entered jointly and severally against all four Defendants.

Further, the Court finds on the settlement with A.T. & T. Financial Corporation, judgment shall be entered in favor of Stephen and Maureen Spicer and against John Balvich and Arlene Balvich in the sum of ... $22,500. Said judgment will be entered jointly and severally against said both Defendants.

Further, the Court finds that Stephen Spicer is entitled to contributions from Arlene Balvich due to her breach of fiduciary responsibilities to the State of Indiana and the other shareholders. Judgment is entered in favor of Stephen Spicer and against Arlene Balvich in the sum of ... $37,591.

Appellant's App. p. 5–20. The Balviches now appeal.

### DISCUSSION AND DECISION

#### I. Standard of Review

■ We initially observe that the trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Thus, we apply a two-tiered standard of review, considering whether the evidence supports the findings and whether the findings support the judgment. *Village Commons, LLC v. Marion County Prosecutor's Office*, 882 N.E.2d 210, 214 (Ind.Ct.App.2008). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

#### II. The Balviches' Claims

#### A. Statute of Limitations

■ The Balviches first contend that the judgment cannot stand because the Spicers' claims against them were barred by the six-year statute of limitations in accordance with Indiana Code section 34–11–2–7. The Balviches contend that the Spicers' cause of action on the Bank One judgment accrued on September 12, 1997, and that the action against AT & T accrued on September 10, 1997, which represent the dates on which the Spicers paid these creditors "and obtained a satisfaction of judgment and a release of judgment against their real estate." Appellant's Br. p. 5–6.[1]

---

1. The statute of limitations arguments are limited to the Bank One judgment and the AT & T judgment. The Balviches have not raised the statute of limitation as a defense to the

In resolving this issue, we initially observe that Indiana Code section 34–11–2–7 provides for a six-year statute of limitations for claims on accounts and contracts not in writing. More specifically, the statute states that:

> The following actions must be commenced within six (6) years after the cause of action accrues:
>
> (1) Action on accounts and contracts not in writing.
>
> (2) Actions for use, rents and profits of real property.
>
> (3) Actions for entries to property other than personal property and for recovering possession of personal property.
>
> (4) Actions for relief against frauds.

However, the Spicers point out that Indiana Code section 34–11–2–11 provides that "an action upon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record ... must be commenced within ten (10) years after the cause of action accrues."

Although the Balviches assert that the Spicers' claims are barred under the six-year statute of limitations because the action for contribution is based on "accounts and contracts not in writing," our Supreme Court in *Pflanz v. Foster* recently determined that a ten-year statute of limitation applies to contribution claims. 888 N.E.2d 756, 758 (Ind.2008) (citing Indiana Code section 34–11–1–2(a) and *IDEM v. Bourbon Mini–Mart, Inc.*, 741 N.E.2d 361 (Ind. Ct.App.2000), *summarily aff'd in pertinent part by* 783 N.E.2d 253 (Ind.2003)). Moreover, the decision in *Pflanz* was based on Indiana Code section 34–11–1–2, which governs causes of action that are not limited by a more specific statute of limitation.

As discussed above, the Spicers paid Bank One and AT & T in September 1997. They obtained a partial release of judgment from Bank One on January 14, 2002, and a partial release of judgment from AT & T on August 14, 1998. Thereafter, the Spicers filed their complaint on February 13, 2004.

In *Bourbon Mini–Mart*, we noted that "contribution involves the partial reimbursement of one who has discharged a common liability." 741 N.E.2d at 369 n. 7. We observed that "Mini–Mart ... [is] suing, not to recover for damages to [its] own property, but, instead, to allocate liability for the funds spent by IDEM to clean up the environmental contamination of the Homeowners' property. The nature or substance of [its] claim sounds in contribution or indemnity, and the general ten-year statute of limitations found at IC 34–11–1–2 applies." *Id.* at 371–72. We also pointed out that

> Because we hold that a ten-year statute of limitations applies, we do not reach the issue of when the limitations period commences to run. An obligation to indemnify or for contribution does not arise until the party seeking such remedy suffers loss or damages, i.e. at the time of payment of the underlying claim, payment of a judgment on the underlying claim, or payment in settlement of the underlying claim. *Essex Group, Inc. v. Nill*, 594 N.E.2d 503, 507 (Ind.Ct. App.1992); *see TLB Plastics Corp. v. Procter & Gamble Paper Products Co.*, 542 N.E.2d 1373, 1376 (Ind.Ct.App. 1989), *trans. dismissed* (obligation to indemnify arises after one seeking indem-

---

trial court's finding and judgment that Arlene is liable to the Spicers in contribution for the

Indiana tax trust account liabilities.

nity suffers loss or damages); *Estate of Leinbach v. Leinbach*, 486 N.E.2d 2, 5 (Ind.Ct.App.1985) ("to be entitled to contribution, the [claimant] must have first paid the debt or more than her proportionate share thereof"); *McLochlin v. Miller*, 139 Ind.App. 443, 448, 217 N.E.2d 50, 53 (1966) ("payment must be paid under compulsion to entitle payor to contribution"). T.R. 14 "permits a claim for indemnity to be litigated contemporaneously with the injured party's claim, but the rule in no way suggests that the obligation to indemnify arises before the indemnity claimant suffers loss." *TLB Plastics Corp.*, 542 N.E.2d at 1376.

Mini–Mart ... [has] not paid IDEM for the remediation costs. On November 30, 1999, the trial court granted IDEM's motion for partial summary judgment concluding that Mini–Mart ... [was] estopped from denying liability for the contamination. On the Record before us, it appears that the earliest date from which the statute of limitations could run is November 30, 1999.

*Id.* at 372 n. 9. Our Supreme Court accepted transfer and summarily affirmed the statute of limitation holding. *Bourbon Mini–Mart v. Gast Fuel and Services*, 783 N.E.2d 253, 264 (Ind.2003).

■ Thereafter, the Supreme Court addressed the issue of when the statute of limitation for a contribution claim begins to run in *Pflanz*. Specifically, it was observed that:

Foster contends that the statute of limitation began running when the Pflanzes knew or should have known about the contamination. The Pflanzes' contribution claim, however, is not a claim for damage to the property itself. Rather, they seek to recover for the cleanup costs IDEM required, which resulted from Foster's use of the land.

In contribution or indemnification cases, the damage that occurs is the incurrence of a monetary obligation that is attributable to the actions of another party. That is why, generally, parties bringing contribution and indemnification claims must wait until after the obligation to pay is incurred, for otherwise the claim would lack the essential damage element. *See Bourbon Mini–Mart*, 741 N.E.2d at 372 n. 9 ("an obligation to indemnify or for contribution does not arise until the party seeking such remedy suffers loss of damages, i.e., at the time of payment of the underlying claim") *TLB Plastics Corp., Inc. v. Procter & Gamble Paper Products Co.*, 542 N.E.2d 1373, 1376 (Ind.Ct.App.1989) (obligation to indemnify arises only after one seeking indemnity suffers loss or damages even if indemnity and injured party's claim are litigated contemporaneously); *Estate of Leinbach v. Leinbach*, 486 N.E.2d 2, 5 (Ind.Ct.App.1985) ("to be entitled to contribution, the [claimant] must have first paid the debt"); *McLochlin v. Miller*, 139 Ind.App. 443, 448, 217 N.E.2d 50, 53 (Ind.App.1966) ("payment must be made under compulsion to entitle payor to contribution").

Because the damage at issue in the Pflanzes' contribution claim is the cleanup obligation assessed by IDEM that resulted from Foster's use of the land, the statute of limitation did not begin to accrue until after the Pflanzes were ordered to clean up the property.

Accordingly, because IDEM ordered the Pflanzes to pay for the environmental cleanup costs in 2001, the Pflanzes filed their contribution claim well within the ten-year statute of limitation.

*Id.* at 759.

In examining the principles set forth in *Pflanz* and *Bourbon Mini–Mart*, it is ap-

parent that the statute of limitations on the Spicers's claim began to run when they made payments to Bank One and AT & T. As the Spicers paid Bank One and AT & T in September 1997, they had until September 2007 to bring their contribution action against the Balviches in accordance with the ten-year statute of limitation set forth in Indiana Code section 34–11–1–2. Because the Spicers filed their action in February 2004, the Balviches' contention that the Spicers' claim for contribution was time-barred as a matter of law fails.

### B. Contribution—Joint and Several Liability

■ The Balviches next contend that the trial court erred in determining that the Spicers were entitled to contribution toward payment of the Bank One and AT & T judgments. More specifically, the Balviches argue that "any recovery is pro-rata against each co-debtor not jointly and severally against all co-debtors except those debtors who received a discharge in bankruptcy." Appellants' Br. p. 6. Additionally, the Balviches claim that the remedy of contribution was not proper because the Spicers "did not pay the judgments in full." *Id.* at 6–7.

■ The "doctrine of contribution rests on the principle that where parties stand in equal right, equality of burden becomes equity." *Cook v. Cook,* 92 Ind. 398, 399 (1884). Moreover, the right of contribution is based upon "natural Justice, [and] it applies to any relation, including that of joint contractors, where equity between the parties is equality of burden, and one of them discharges more than his share of the common obligation." *Norris v. Churchill,* 20 Ind.App. 668, 51 N.E. 104 (1898). Additionally, as this court held in *Fleck v. Ragan:*

The Indiana Code is silent as to the liability between co-guarantors. Thus, we must look to the common law. The theory of contribution between co-sureties is not a novel one. The right of contribution operates to make sure those who assume a common burden carry it in equal portions. This theory has also been applied to co-guarantors. 514 N.E.2d 1287, 1288–89 (Ind.Ct.App. 1987). Finally, Indiana Code section 26–1–3.1–116 provides that "except as provided in I.C. 26–1–3.1–419(e)[ 2] or by agreement of the affected parties, a party having joint and several liability who pays the instrument is entitled to receive from *any party having the same joint and several liability contribution in accordance with applicable law.*" (Emphasis added).

In this case, the evidence demonstrated that the Balviches executed loan guarantees when GMI obtained the loan from Bank One. Tr. p. 92; Appellees' App. p. 58. The loan was secured by a mortgage, and Maureen Spicer testified that all of the loan guarantors were seated around a table at the bank and the loan officers specifically advised everyone that they were each personally responsible for the loan. Tr. p. 53.

The undisputed facts show that after the loan went into default, Bank One filed a foreclosure action and obtained a judgment against the loan guarantors jointly and severally. Appellees' App. p. 33. Thereafter, Bank One sold the real estate and a deficiency judgment was entered against the loan guarantors.

The Spicers paid $152,500 to obtain a release of the Bank One judgment. *Id.* at 64. Jordan and Beth Balvich paid $5000, and John and Arlene paid $5000. In es-

---

**2.** This section, which does not apply here, refers to the right of contribution between accommodated parties and accommodation parties. GMI incurred the loan and is the accommodated party. The Balviches guaranteed the loan and are accommodation parties.

sence, the Spicers paid over 76% of the deficiency judgment to obtain a release. The trial court determined that the parties paid a total of $162,500 on the judgment, and that an equal pro-rata share among the defendants amounts to $27,083.33 per person in light of the joint and several liability. As a result, the trial court entered a judgment of $108,332 in favor of the Spicers and against the Balviches.

With regard to the AT & T lease judgment, a New Jersey court entered a judgment in the amount of $247,998.57 in September 1996, against the corporation and the Balviches "jointly and severally." *Id.* at 119. As noted above, the judgment was subsequently domesticated in Indiana on or about June 19, 1997.

AT & T pursued proceedings supplemental in an attempt to collect the judgment and the Spicers ultimately paid $60,000 in settlement of the judgment on September 10, 1997. As John and Arlene paid $15,000 toward the judgment, the trial court determined that "on the issue of the AT & T lease, the decision on that issue is the same. Steve and Maureen, John and Arelene, are all judgment debtors, jointly and severally on the obligations and, therefore, must share equally in the amounts that were paid." *Id.* at 20. As a result, the trial court determined that the total payment toward the judgment was $75,000, and one-half of that amount was the responsibility of John and Arlene. As set forth in the findings, the trial court granted Arlene and John credit for the $15,000 that they already paid. Hence, the trial court entered judgment in favor of the Spicers for $22,500, and against John and Arlene jointly and severally.

Under these circumstances, the Balviches argue that this court's opinion in *Norris* controls and supports their claim that the Spicers are not entitled to contribution because they failed to pay the judgment in full. More specifically, the Balviches cite *Norris* for the proposition that "contribution may be sought after [the] promissory note [was] paid and then only for that amount of the debt discharged in excess of the share of the common burden." Appellants' Br. p. 9.

In *Norris*, the plaintiff, defendant, and three others, jointly purchased a horse, with each of the five buyers paying one-sixth of the price. The remaining one-sixth part of the purchase money was borrowed from a bank upon their joint promissory note that was payable to the bank upon demand. The appellee paid all of the original debt except the one-fifth part that the appellant paid. The five makers of the original note owned equal interests in the horse, and when the makers of the original note borrowed the money for which it was given, it was agreed that each should pay one-fifth of the amount that was borrowed. It was determined that the makers of the original joint note derived benefit equally from the proceeds of that note. The *Norris* court observed that "when there is an entire debt owed equally by several, the solvent debtors must share equally in any burden thrown upon them by the insolvency of a part of their number. Sureties who are insolvent are to be excluded in determining the proportions." *Id.* at 104–05. Additionally, it was determined that

Two of the five original joint debtors being insolvent, and the appellee having been compelled to pay, in addition to his own share, the shares of these two insolvents, equity, which is equality, demanded that the debtors who were not insolvent should equally bear the burden of the shares of the insolvents so paid; that the appellant should reimburse the appellee to the extent of one-third of the amount which the latter has thus been

compelled to pay in excess of his ratable share of the joint debt.

*Id.* at 106.

Although the holding in *Norris* stands for the proposition that insolvent guarantors might be excluded from having to pay a contribution claim, it does not follow that the Spicers should bear the total burden imposed by the insolvency of other loan guarantors. The evidence established that the Spicers suffered financially because Bank One and AT & T singled them out as the parties with the deep pocket. Indeed, we do not read *Norris* so broadly as to imply that it would be equitable to permit some of the Balviches to benefit in light of the insolvency or bankruptcy of others who were potentially liable on the debt. Therefore, we reject the Balviches' contention that the holding in *Norris* warrants reversal.

■ The Balviches further claim that the judgment cannot stand because Indiana Code section 34–22–1–6 prevents collection from another co-defendant until the judgment is satisfied in its entirety. This statute, which is entitled "remedies against codefendants and cosureties," provides in relevant part that

A person who:

(1) is one (1) of several:

(A) judgment defendants; or

(B) replevin sureties; and

(2) paid and satisfied the plaintiff;

has the remedy provided in section 5[ [3]] of this chapter against the codefendants or cosureties to collect from them the ratable proportion each is equitably bound to pay.

I.C. 34–22–1–6. Contrary to the Balviches' claims, the statute does not contain a requirement that the judgment must be paid "in full" or "in its entirety." Appellant's Br. p. 9. As discussed above, the Spicers paid the plaintiff-creditors and satisfied the judgment as it pertained to the Spicers' obligation as evidenced by the release of judgment. Therefore, to the extent that Indiana Code section 34–22–1–6 applies here, it simply means that the Spicers may pursue the co-loan guarantors pursuant to the judgments that were entered. Finally, we note that Indiana Trial Rule 54(E) provides that "unless otherwise specified therein, judgment against two or more persons ... shall be deemed joint and several for purposes of permitting enforcement proceedings jointly or separately against different parties or jointly or separately against their property."

In light of the above, we conclude that the trial court properly determined that the Spicers could pursue their contribution remedies against the Balviches regarding the Bank One and AT & T judgments. Moreover, from the evidence presented, it is apparent that the trial court properly computed the damages that the Balviches owed to the Spicers. Thus, the Balviches' contention with regard to this issue fails.

*C. Tax Liability and Contribution*

■ Finally, the Balviches argue that the trial court erred in allowing the Spicers to seek contribution from them regarding the tax liability that the businesses had incurred. In particular, the Balviches maintain that the trial court was without jurisdiction to order the contribution because the tax liability had been determined by the Department of Revenue

**3.** Indiana Code section 34–22–1–5 simply provides that when a defendant is compelled to pay a judgment or part of a judgment, or makes any payment that is applied to a judgment by reason of the person's suretyship, the judgment is not discharged by the payment. In essence, the judgment remains in force for the use of the person making the payment.

and the Indiana Tax Court has exclusive jurisdiction over such matters.

We initially observe that Indiana Code section 6–2.5–2–1 provides that "a retail merchant shall collect the tax as agent for the state." Additionally, Indiana Code 6–2.5–9–3 provides that

An individual who:

(1) is an individual retail merchant or is an employee, officer, or member of a corporate or partnership retail merchant; and

(2) has a duty to remit state gross retail or use taxes (as described in IC 6–2.5–3–2) to the department;

*holds those taxes in trust for the state and is personally liable for the payment of those taxes, plus any penalties and interest attributable to those taxes, to the state.*

(Emphasis added). Finally, a companion statute, Indiana Code section 6–3–4–8, states that "in the case of a corporate or partnership employer, every officer, employee or member of such employer who, as such officer, employee or member is under a duty to deduct and remit such taxes shall be personally liable for such taxes, penalties, and interest."

In this case, the undisputed evidence established that the corporate entities, as retail merchants, collected Indiana Sales Tax. Arlene Balvich was a member of a corporate retail merchant who had the duty to remit state sales taxes. She maintained the checkbook and the evidence demonstrated that she was the corporate officer responsible for filing sales tax and withholding returns to pay the trust account taxes. Tr. p. 72–73. Therefore, Arlene stood in a fiduciary relationship with the other shareholders and the State, and she had a duty to remit the taxes to the Department of Revenue.

Although the Balviches direct us to *State v. Sproles*, 672 N.E.2d 1353 (Ind. 1996), for the proposition that the trial court was without jurisdiction over this matter because the Indiana Tax Court has exclusive jurisdiction to entertain a challenge to a tax, we note that the propriety of the imposition of a tax is not at issue here. Moreover, the *Sproles* court observed that there are two prerequisites to the Tax Court's exclusive jurisdiction: "the case must arise under the tax laws of this state, and the proceeding is an initial appeal of a final determination." *Id.* at 1356.

In this case, when the Department of Revenue pursued the Spicers as the responsible party for failing to make the tax payments, Stephen tendered an "Affidavit of Corporate Responsibility" to that agency. Appellees' App. p. 137. Stephen identified Arlene as the individual who maintained the corporate books and records as well as the person who held the payroll records and canceled checks. *Id.* at 138–39.

The evidence demonstrated that the Spicers paid the Department of Revenue $75,182.87 in delinquent taxes. Tr. p. 73. Moreover, it was established that the trust account taxes involved the three corporate entities that are the subject matter of the present litigation. The Spicers protested the initial Department of Revenue determination and addressed the issues in the Indiana Tax Court. However, the present action is one for contribution by the Spicers against Arlene. As the trial court observed, the issue before it was to determine whether Arlene should be held responsible for her contribution in light of her breach of duty to the State and the other shareholders of the businesses. Thus, contrary to the Balviches' claim, the Spicers' cause of action is not one that arose under the tax laws, and it is not an appeal of a tax determination. As a result,

the trial court did not err in concluding that the Spicers were entitled to contribution from Arlene with regard to the tax trust account liabilities.

## CONCLUSION

In light of our discussion above, we conclude that the Spicers' action against the Balviches for contribution was not barred by the statute of limitations. Additionally, the evidence established that the Spicers were entitled to contribution from the Balviches on the AT & T and Bank One judgments, and the trial court properly concluded that the Spicers were entitled to contribution from Arlene on the Indiana tax trust liabilities.

The judgment of the trial court is affirmed.

MATHIAS, J., and BROWN, J., concur.