**Gregory M. SMALL, Appellant,**

v.

**Frank A. ROGERS, Appellee.**

No. 29A02–1001–PL–30.

Court of Appeals of Indiana.

Nov. 17, 2010.

Richard C. Richmond, III, Taft Stettinius & Hollister, LLP, Indianapolis, IN, Attorney for Appellant.

Arend J. Abel, Kelley J. Johnson, Cohen & Malad, LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Gregory Small appeals the trial court's entry of summary judgment in favor of Frank Rogers.

We reverse.

### ISSUE

Whether the trial court erred in granting summary judgment to Rogers.

### FACTS

1. *Plainfield Place, LLC*

Small is the president of Equicor Development, Inc. ("Equicor"), an Indiana corporation. On or about May 4, 1995, Rogers, Jeffrey Hubley, and Equicor formed Plainfield Place, LLC ("Plainfield Place"), an Indiana limited liability company. Rogers, Hubley, and Equicor owned membership interests in Plainfield Place in the amount of 53.90%, 5.67%, and 40.43%, respectively. Equicor managed Plainfield Place.

In October of 1995, Plainfield Place purchased real property near Plainfield, Indiana (the "Plainfield Property"). On or about September 21, 2003, Plainfield Place entered into a loan agreement with Busey Bank in order to secure financing for the development of the Plainfield Property. Pursuant to the loan agreement, Plainfield Place executed two promissory notes, one in the amount of $2,850,000.00 and one in the amount of $400,000.00. Small, Rogers, and Hubley each executed personal guaranties as security for the promissory notes.

On February 26, 2009, counsel for Busey Bank sent Plainfield Place and co-guarantors, Small, Rogers, and Hubley, a letter, notifying them of Plainfield Place's default on the promissory notes. Busey Bank therefore "demand[ed] immediate payment of all amounts owed" to it, which included principal in the total amount of $1,667,435.98, interest, fees, and costs. (App.86).

On March 5, 2009, counsel for Rogers sent letters to Hubley and to Small, as president of Equicor, regarding Busey Bank's demand letter. In order to "forbear collection action on the debt" by Busey Bank, Rogers, as the majority member of Plainfield Place, requested that Equicor and Hubley contribute capital in the amount of $8,377.41 and $1,174.87, respectively. (App.48, 49). "Provided that Equicor and Hubley" agreed to do so, Rogers, in turn, pledged to contribute $11,168.50. (App.48, 49). As Rogers intended the total contributions to satisfy the interest due Busey Bank through the end of March, 2009, he requested that the funds be provided by March 12, 2009. On or about March 13, 2009, Rogers paid $10,360.39 to Busey Bank.

On March 17, 2009, counsel for Rogers sent another letter to Small and Hubley, demanding their "share[s] of the guarantee payments" in proportion to their ownership interests in Plainfield Place. (App.54). Accordingly, Rogers sought $4,188.71 from Small and $587.43 from Hubley by March 18, 2009. Subsequently, Hubley paid his share of the guarantee payment. Small did not.

On March 26, 2009, Rogers filed a complaint for damages against Small, asserting a "right of contribution against" Small "for the amount paid by Rogers in excess of his pro rata share and for the disproportionate benefit received by Small through" Equi-

cor's management fees and real estate commissions. (App.25).

### 2. *Patriot's Place, LLC*

On or about June 22, 1998, Rogers and Small, as president of Equicor, formed Patriot's Place, LLC ("Patriot's Place"). Rogers and Equicor each owned a 50% membership interest in Patriot's Place. Equicor also managed the business affairs of Patriot's Place.

In June of 1998, Patriot's Place purchased real property in Indianapolis (the "Indianapolis Property"). On or about November 3, 2004, Patriot's Place entered into a loan agreement with Monroe Bank in order to refinance a loan on the Indianapolis Property. Pursuant to the loan agreement, Patriot's Place executed two promissory notes, one in the amount of $3,400,000.00 and one in the amount of $350,000.00. Rogers and Small each executed personal guaranties as security for the promissory notes.

On November 21, 2008, Patriot's Place entered into another loan agreement with Monroe Bank, thereby executing a promissory note in the amount of $75,000.00. Rogers and Small executed personal guaranties as security for the promissory note.

On February 27, 2009, counsel for Rogers called for a capital contribution from Small to pay some of Patriot's Place's vendors. Specifically, Rogers requested a payment of $44,171.53 on or before March 6, 2009.

On March 23, 2009, counsel for Monroe Bank sent Rogers and Small a notice of default and demand letter. Monroe Bank requested full payment on the promissory notes within ten days. According to the letter, Patriot's Place owed Monroe Bank $3,718,966.90 as of March 15, 2009.

On or before April 14, 2009, Rogers paid Monroe Bank $77,723.52 pursuant to his

guarantee. On April 14, 2009, Rogers demanded contribution from Small in the amount of $38,861.76 pursuant to Small's guarantee.

On April 23, 2009, Rogers filed an amended complaint for damages against Small. In addition to asserting a right of contribution against Small as a co-guarantor of the promissory notes executed in favor of Busey Bank, Rogers asserted a right of contribution against Small as a co-guarantor of the promissory notes executed in favor of Monroe Bank.

Small filed his answer on May 26, 2009. Small admitted that the members of Plainfield Place "executed personal guarantees of the notes" held by Busey Bank. (App. 104). Small also admitted that the members of Patriot's Place "executed personal guarantees of the notes" held by Monroe Bank. (App.107).

### 3. *Summary Judgment*

On May 12, 2009, Rogers filed a motion for summary judgment and memorandum in support thereof. He asserted that he was "entitled to summary judgment on his claim for contribution against co-guarantor Small for the payments of interest under his guaranties that Rogers made to both Busey Bank and Monroe Bank." (App.76).

Small filed his opposition to Rogers' motion for summary judgment on June 15, 2009. Among other things, Small argued that "the undisputed evidence demonstrates that Rogers has not paid more than his pro rata share and, therefore, is not entitled to contribution as a matter of law." (App.162).

The trial court held a hearing on Rogers' motion on September 21, 2009. During the hearing, Rogers' counsel indicated that Busey Bank and Monroe Bank had instituted actions against Rogers and Small.

On October 30, 2009, the trial court entered its order, stating, in part, as follows:

> Rogers has paid more than his pro rata share of the amounts that have been paid to the banks. He has paid all the amounts alleged in the complaint, more than $88,000, and Small has paid none. Small is liable to Rogers for his pro rata share of the amounts paid. It is not necessary that Rogers have paid the liability in full. ... The law finds the right of contribution when one party pays more than his share of the common obligation. Here, Rogers paid a portion of the demanded amounts due to the Demands made from the banks and in order to prevent the banks from instituting the threatened lawsuits. Small did not pay at all. Rogers, therefore, paid more than his share and has a right to contribution from his co-guarantors.

(App.8–9). Accordingly, the trial court granted summary judgment in favor of Rogers.

On November 25, 2009, Small filed a motion to reconsider. Following a hearing, the trial court denied the motion on December 15, 2009. Also on December 15, 2009, the trial court entered its order on damages and final judgment, wherein it awarded Rogers damages in the amount of $43,050.47.[1]

### DECISION

Small raises three issues. We find one to be dispositive: whether the trial court

---

1. This amount equals 50% (Small's share in Patriot's Place) of $77,723.52 (the amount Rogers paid to Monroe Bank on behalf of Patriot's Place) plus 40.43% (Small's share of Plainfield Place) of $10,360.39 (the amount Rogers paid to Busey Bank on behalf of Plainfield Place).

erred in finding that Rogers is entitled to summary judgment as a matter of law.

When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury,* 671 N.E.2d 113, 116 (Ind.1996). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 169 (Ind.1996).

All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 249 (Ind.1996). However, once the movant has carried his initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.,* 612 N.E.2d 135, 138 (Ind. Ct.App.1993), *trans. denied.* If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id.*

"Additionally, when material facts are not in dispute, our review is limited to determining whether the trial court correctly applied the law to the undisputed facts." *Mills v. Berrios,* 851 N.E.2d 1066, 1069 (Ind.Ct.App.2006) (quoting *Bennett v. CrownLife Ins. Co.,* 776 N.E.2d 1264, 1268 (Ind.Ct.App.2002)). We review a question of law de novo. *Id.*

Small argues that the right to contribution does not apply because the payments that Rogers made to the Busey Bank and Monroe Bank "amounted to far, far less than his proportionate share of the guaranteed debt they claimed to be owed"; "did not pay off the [l]oans"; and did not "result in either Rogers or Small being released from any further liability" under the promissory notes. Small's Br. at 14. We agree that Rogers is not entitled to contribution given the undisputed facts of this case.

■■■ "A guaranty is a conditional promise to answer for a debt or default of another person." *TW Gen. Contracting Serv., Inc. v. First Farmers Bank & Trust,* 904 N.E.2d 1285, 1288 (Ind.Ct.App.2009), *reh'g denied.* Thus, "the guarantor promises to pay only if the debtor/borrower fails to pay." *Id.*

■■■ " '[C]ontribution involves the partial reimbursement of one who has discharged a common liability.' " *Balvich v. Spicer,* 894 N.E.2d 235, 243 (Ind.Ct.App. 2008) (quoting *Comm'r, Ind. Dep't of Envtl. Mgmt. v. Bourbon Mini–Mart, Inc.,* 741 N.E.2d 361, 369 n. 7 (Ind.Ct.App.2000), *rev'd in part on other grounds,* 783 N.E.2d 253 (Ind.2003)); *see also Mullen v. Cogdell,* 643 N.E.2d 390, 400 n. 3 (Ind.Ct.App. 1994). "Discharge" is defined as "[a]ny method by which a legal duty is extinguished; esp., the payment of a debt or satisfaction of some other obligation." BLACK'S LAW DICTIONARY 495 (8th ed.2004).

The "doctrine of contribution rests on the principle that where parties stand in equal right, equality of burden becomes equity." Moreover, the right of contribution is based upon "natural Justice, [and] it applies to any relation, including that of joint contractors, where equity between the parties is equality of burden, and one of them discharges more than his share of the common obligation."

*Balvich,* 894 N.E.2d at 245 (internal citations omitted).

■ As the Indiana Code is silent as to the liability between co-guarantors, we must look to common law. *Id.* In so doing, we apply the same theory of contribution that has been applied to co-sureties to co-guarantors, namely, " '[t]he right of contribution operates to make sure those who assume a common burden carry it in equal portions.' " *Id.* (quoting *Fleck v. Ragan,* 514 N.E.2d 1287, 1288–89 (Ind.Ct. App.1987)).

■ As to co-debtors, equity permits one who has paid the debt to recover from the other the portion he should have borne. *Estate of Leinbach v. Leinbach,* 486 N.E.2d 2, 3 (Ind.Ct.App.1985). In order to be entitled to contribution, however, the claimant "must have first paid the debt or more than her proportionate share thereof." *Id.* at 5; *see also Konger v. Schillace,* 875 N.E.2d 343, 349 (Ind.Ct. App.2007).

■ Here, Plainfield Place has three members, with Rogers owning a membership interest of 53.90%. Patriot's Place has two members, with Rogers owning a membership interest of 50%. As of February 18, 2009, Plainfield Place owed Busey Bank $1,667,435.98. Rogers subsequently paid Busey Bank $10,360.39 toward the debt. As of March 15, 2009, Patriot's Place owed Monroe Bank $3,718,966.90, of which Rogers paid $77,723.52. Thus, the evidence shows that Rogers paid only a portion of the amounts due under the promissory notes and far less than his proportionate share of the debts owed to both Busey Bank and Monroe Bank. Thus, we cannot say that the right to contribution applies in this case.

Citing to *Balvich,* Rogers argues that "the undisputed facts demonstrate that Rogers has a right of contribution against co-guarantor Small for $43,050.47, the total amount paid by Rogers in excess of his pro rata share." Rogers' Br. at 16. Rogers, however, misconstrues *Balvich.*

In *Balvich,* Stephen and Maureen Spicer owned 25% of Group Management, Inc. ("GM"); 50% of Group Management II ("GM II"); and 16.55% of Group Management III ("GM III"). Beth and Jordan Balvich owned a 5% interest in GM II and a 5.34% interest in GM III. Other Balvich family members owned additional interests in the entities.

In 1991, GM borrowed $700,000.00 from Bank One. The Spicers and "[s]everal of the Balviches" guaranteed the loan. 894 N.E.2d at 237. At some point, GM II obtained financing from AT&T Financial Corporation ("AT&T"), with the Spicers and at least two Balviches, John and Arlene, guaranteeing that loan. GM and GM II subsequently defaulted on the loans.

Bank One eventually obtained a deficiency judgment in the amount of $199,000.00. "The judgment was entered against all guarantors jointly and severally." *Id.* The Spicers obtained a release of the judgment after paying Bank One $152,500.00. Bank One also released John and Arlene Balvich and Jordan and Beth Balvich after each couple paid $5,000.00.

AT&T obtained a judgment in the amount of $247,998.57. The Spicers obtained a release after paying $60,000.00. AT&T released John and Arlene Balvich from the judgment after they paid $15,000.00.

Thereafter, "the Spicers instituted an action against the Balviches for contribution for the $152,500 payment to Bank One" and the $60,000.00 payment to AT&T. *Id.* at 238. Following a trial, the trial court entered judgment for the Spicers " 'on the issue of contribution in the sum of $108,332 and against John Balvich,

Arlene Balvich, Jordan Balvich, and Beth Balvich'" for amounts paid to Bank One; and "'against John Balvich and Arlene Balvich in the sum of ... $22,500'" for amounts paid to AT&T. *Id.* at 242. The Balviches appealed.

Among the issues raised, the Balviches argued "the remedy of contribution was not proper because the Spicers 'did not pay the judgments in full.'" *Id.* at 245 (quoting Appellants' Br. at 6). In so arguing, the Balviches cited to Indiana Code section 34–22–1–6, which provides:

A person who:

(1) is one (1) of several:

(A) judgment defendants; or

(B) replevin sureties; and

(2) paid and *satisfied* the plaintiff;

has the remedy provided in section 5 of this chapter against the codefendants or cosureties to collect from them the ratable proportion each is equitably bound to pay.

(Emphasis added).

The *Balvich*-court found that "[c]ontrary to the Balviches' claims, the statute does not contain a requirement that the judgment must be paid 'in full' or in its entirety.'" *Id.* at 247. Rather, this court held that Indiana Code section 34–22–1–6 "simply means that the Spicers may pursue the co-loan guarantors pursuant to the judgments that were entered," where the Spicers paid the creditors and *satisfied* the judgments as they "pertained to the Spicers' obligation as evidenced by the release of judgment[s]." *Id.*

*Balvich* is distinguishable from the case at hand. In *Balvich*, the banks reduced the co-guarantors' debt to two judgments. The Spicers subsequently paid more than their proportionate share of the judgments, thereby satisfying the judgments.

Here, unlike in *Balvich*, the debt owed by Rogers and Small has not been reduced to judgment. Thus, there can be no satisfaction of the judgment, and therefore, no discharge of the debt. *Cf. Titan Loan Inv. Fund, L.P. v. Marion Hotel Partners, LLC*, 891 N.E.2d 74, 77 (Ind.Ct.App.2008) (stating that where the judgment has been satisfied, the judgment debt is discharged), *trans. denied.*

Rather, in this case, the debt still exists. Rogers did not discharge the debt, either by paying the debt or a judgment on the debt. *See Balvich*, 894 N.E.2d at 243 (noting that contribution involves the reimbursement of one who has *discharged* a common liability). Furthermore, the amounts paid by Rogers do not constitute more than his proportionate share of the more than $5,000,000.00 of debt incurred. He therefore is not entitled to contribution from his co-guarantors at this time.[2] Finding that Rogers is not entitled to judgment as a matter of law, we hereby reverse the trial court's entry of summary judgment for Rogers.[3]

Reversed.

BRADFORD, J., and BROWN, J., concur.

---

2. To hold otherwise would result in a claim for contribution being asserted upon each and every payment made toward a debt until the debt is discharged. *But cf. Afolabi v. Atlantic Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1175 (Ind.Ct.App.2006) (holding that prior foreclosure actions do not preclude successive foreclosure actions where there are subsequent and separate defaults). Of course, this is not to say that the amounts paid toward a debt cannot, or will not, be credited to the party asserting the right of contribution once the guaranteed debt is discharged.

3. We note that Small asserts that the trial court improperly granted Rogers' motion for summary judgment because Rogers failed to

attach a copy of the guaranties to his pleadings pursuant to Indiana Trial Rule 9.2(A) and failed to designate the guaranties as evidence pursuant to Indiana Trial Rule 56(E). We need not address these claims, however, as resolution of this action does not require an interpretation of the guaranty agreements. Specifically, we are not determining Small's liability under the terms of the guaranties; rather, we are determining it under the law of contribution. *Cf. TW Gen. Contracting Serv., Inc.,* 904 N.E.2d at 1288 (" 'Generally, the nature and extent of a guarantor's liability depends upon the terms of the contract, and a guarantor cannot be made liable beyond the terms of the guaranty.' " (emphasis omitted) (quoting *Bruno v. Wells Fargo Bank, N.A.,* 850 N.E.2d 940, 945 (Ind.Ct.App.2006))).