ATTORNEYS FOR APPELLANTS
Donn H. Wray
Justin W. Leverton
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
THE INDIANA PETROLEUM
MARKETERS AND CONVENIENCE
STORE ASSOCIATION
George M. Plews
Christopher J. Braun
Jeffrey D. Featherstun
John D. Moriarty
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
INDIANA ASSOCIATION OF CITIES AND TOWNS
AND INDIANA MUNICIPAL LAWYERS' ASSOCIATION
Donald M. Snemis
Brent H. Huber
Freedom S.N. Smith
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
Rodney E. Farrow
Seymour, Indiana

ATTORNEYS FOR AMICI CURIAE
INSURANCE INSTITUTE OF INDIANA, INC.
AND NATIONAL ASSOCIATION OF MUTUAL
INSURANCE COMPANIES
John C. Trimble
Richard K. Shoultz
Indianapolis, Indiana



FILED

Jun 19 2008, 3:03 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 36S01-0710-CV-425

RICHARD U. PFLANZ AND
DELORES J. PFLANZ,

*Appellants (Plaintiffs Below),*

v.

MERRILL FOSTER, INDIVIDUALLY,
MERRILL FOSTER, D/B/A FRIENDLY
FOSTER'S SERVICE, AND SUNOCO, INC.
(R&M),

*Appellees (Defendants Below).*

Appeal from the Jackson Superior Court, No. 36D01-0412-CT-36
The Honorable Stephen R. Heimann, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 36A01-0612-CV-548

_____

**June 19, 2008**


**Shepard, Chief Justice.**

The question here is whether a property owner's claim for contribution toward environmental cleanup costs is barred by the statute of limitation if the owner should have known about the contamination more than ten years before the complaint was filed. We hold that the statute of limitation does not begin to run until the owner is ordered to cleanup the property, regardless of whether an owner earlier knew or should have known about the need for cleanup.


**Facts and Procedural History**


Taking all the allegations in the complaint to be true, the facts are as follows. In 1976, Merrill Foster purchased a service station from Sunoco, Inc. and began operating it as Friendly Foster's Service. In 1978, he closed the petroleum dispensing activities and stopped using the underground storage tanks. In April 1984, Richard and Delores Pflanz bought the property from Foster. Prior to the sale, Foster advised the Pflanzes about the presence of the underground tanks, but told them that the tanks were not in use and had been closed. In reality, the tanks remained open and contained some petroleum. The Pflanzes operated a tire store on the property for two years, at which time they sold their business and began leasing the property to a third party.

In 2001, the Pflanzes learned for the first time that there were environmental issues with the property. The Indiana Department of Environmental Management (IDEM) inspected the property and discovered that the underground tanks were leaking. Thereafter, the Pflanzes incurred over $100,000 in cleanup costs, including costs for closing or removing the underground tanks and removing contaminated soil and water.

On December 30, 2004, the Pflanzes filed a complaint against Foster and Sunoco seeking a determination of liability relating to the environmental contamination, damages under theories of waste, negligence, and stigma, contribution for cleanup costs pursuant to the Underground Storage Tanks Act (USTA), and declaratory relief for future anticipated cleanup costs. See Ind. Code Ann. ch. 13-23-13 (West 2007). Foster moved to dismiss for failure to state a claim upon which relief could be granted, arguing that the complaint was barred by the statute of limitation. The trial court agreed and dismissed.

On March 2, 2006, the Pflanzes filed a second complaint under the same cause number, containing allegations substantially similar to those in the first complaint. On Foster's motion, the court dismissed the second complaint.

The Pflanzes appealed. The Court of Appeals affirmed, reasoning that when Indiana enacted the USTA's contribution statute in 1987 and amended it in 1991, the Pflanzes, in the exercise of reasonable diligence, should have tested the property for contamination such that the statute of limitation began to run no later than 1991. Pflanz v. Foster, 871 N.E.2d 971 (Ind. Ct. App. 2007), vacated. We granted transfer.

## I.     Statute of Limitation for Contribution and Declaratory Relief

The parties agree that the general ten-year statute of limitation applies to the Pflanzes' contribution claim. See Ind. Code Ann. § 34-11-1-2(a) (West 2007). Cf., Comm'r, Ind. Dep't of Envtl. Mgmt. v. Bourbon Mini-Mart, Inc., 741 N.E.2d 361 (Ind. Ct. App. 2000) (applying the ten-year statute of limitation for actions that are not limited by any other statute, rather than the six-year statute for property damage, because the case involved recovery of environmental cleanup costs), summarily aff'd by 783 N.E.2d 253 (Ind. 2003). The resolution of this case turns on when the ten-year limitation began to run.

In the American legal system, demonstrated harm is an indispensable element of virtually every type of civil claim. In cases ranging from contract to tort to medical malpractice, a

claimant cannot recover a monetary judgment unless he has suffered actual damage. The law does not usually permit monetary recovery for claims solely involving future damages; rather, some damage must have already begun to occur. This notion that the statute of limitation begins to run when all the elements of a cause of action can be shown (including whether some damages have been felt) is part of how we determine when a cause "accrues." See Doe v. United Methodist Church, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996) ("For a cause of action to accrue [for limitation purposes], it is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred.")

Under Indiana's discovery rule, a cause of action accrues, and the statute of limitation begins to run, when a claimant knows or in exercise of ordinary diligence should have known of the injury. Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992).

Foster contends that the statute of limitation began running when the Pflanzes knew or should have known about the contamination. The Pflanzes' contribution claim, however, is not a claim for damage to the property itself. Rather, they seek to recover for the cleanup costs IDEM required, which resulted from Foster's use of the land.

In contribution or indemnification cases, the damage that occurs is the incurrence of a monetary obligation that is attributable to the actions of another party. That is why, generally, parties bringing contribution and indemnification claims must wait until after the obligation to pay is incurred, for otherwise the claim would lack the essential damage element. See Bourbon Mini-Mart, 741 N.E.2d at 372 n.9 ("an obligation to indemnify or for contribution does not arise until the party seeking such remedy suffers loss of damages, i.e., at the time of payment of the underlying claim"); TLB Plastics Corp., Inc. v. Proctor & Gamble Paper Prod. Co., 542 N.E.2d 1373, 1376 (Ind. Ct. App. 1989) (obligation to indemnify arises only after one seeking indemnity suffers loss or damages even if indemnity and injured party's claim are litigated contemporaneously); Estate of Leinbach v. Leinbach, 486 N.E.2d 2, 5 (Ind. Ct. App. 1985) ("to be entitled to contribution, the [claimant] must have first paid the debt"); McLochlin v. Miller, 139 Ind. App. 443, 448, 217 N.E.2d 50, 53 (Ind. Ct. App. 1966) ("payment must be made under compulsion to entitle payor to contribution").

4

Because the damage at issue in the Pflanzes' contribution claim is the cleanup obligation assessed by IDEM that resulted from Foster's use of the land, the statute of limitation did not begin to accrue until after the Pflanzes were ordered to clean up the property.

Accordingly, because IDEM ordered the Pflanzes to pay for the environmental cleanup costs in 2001, the Pflanzes filed their contribution claim well within the ten-year statute of limitation.

## II.    Statute of Limitation for Stigma Damages

Indiana law permits recovery of "stigma damages" for losses in the fair market value of property after remediation of environmental contamination. Terra-Products, Inc. v. Kraft Gen. Foods, Inc., 653 N.E.2d 89 (Ind. Ct. App. 1995). Stigma damages are warranted where the claimant can demonstrate that an imperfect market rendered her property less valuable despite complete restoration. Id. at 93. A claim for such damages cannot ripen until remediation has been substantially completed because only then can the impact of the former environmental contamination on property value be determined. Id. See Allgood v. Gen. Motors Corp., No. 102CV1077DFHTAB, 2006 WL 2669337, at *36 (S.D. Ind. Sept. 18, 2006).[1] Claims for stigma damages are governed by a six-year statute of limitation. Ind. Code Ann. § 34-11-2-7 (West 2007).

The statute of limitation for stigma damage claims cannot begin to toll until after the claimant has incurred real damage. As with contribution claims, the "damage" in stigma damage claims is not the environmental contamination itself. Rather, the damage is a diminution in property value despite acceptable remediation of the environmental contamination. This

---

[1] In Allgood, the court stated that

> a [stigma] damage award would need to be based on something more than guesswork. . . . While the court does not mean to indicate that a post-remediation stigma claim can be sought only after the last grain of soil has been removed, the present circumstances of this case make clear that any estimate of post-remediation value of the plaintiffs' land would be speculative and premature.

diminished property value results from buyers' perceived risk that the property will require future environmental cleanup costs.

Stigma damages cannot be determined prior to substantial completion of the remediation. Before substantial completion of the remediation, the property's value will necessarily be lower because of the known presence of environmental contamination. Thus, whether or not the claimant's property value will continue to be diminished post-cleanup cannot be ascertained until remediation has been substantially completed.

The Pflanzes' claim for stigma damages cannot possibly have been outside the statute of limitation period. The Pflanzes first incurred cleanup costs in 2001 and filed their claim in 2006.

### III. Statute of Limitation for Waste and Negligence Claims

Claims for waste and negligence related to real property are governed by a six-year statute of limitation. Ind. Code Ann. § 34-11-2-7 (West 2007).

Unlike the Pflanzes' contribution claim, their claims for waste and negligence are based on alleged injury that arose around the time the property was sold to them, rather than damages that arose at the time of the IDEM inspection. The Pflanzes' claims presumably stem from their contention that, prior to the property's sale, Foster incorrectly told them the underground storage tanks were not in use and had been closed. (Appellants' Br. at 11.) The Pflanzes argue that because of what they describe as Foster's "fraudulent misrepresentation," they were prevented from discovering the injury (i.e., that the tanks may cause or may have caused environmental contamination) until the IDEM inspection in 2001. (Id.)

Foster, on the other hand, argues that the Pflanzes should have discovered the potential injury no later than 1991 because by that time Indiana had adopted legislation, including the USTA, providing a right to contribution for costs associated with underground storage tank environmental remediation. See Ind. Code Ann. ch. 13-23-13. According to Foster, the Pflanzes

should have taken steps to investigate and monitor the underground storage tanks after the adoption of that legislation.

Neither party asserts that the Pflanzes had actual knowledge that the underground storage tanks could result in environmental contamination prior to the IDEM inspection in 2001. Thus, for ascertaining when the statute of limitation began to run on the negligence and waste claims, the question is when the Pflanzes, in the exercise of ordinary diligence, should have known of the injury.

The resolution of this question rests on factual determinations not yet in the record. We cannot accept the trial court's holding that, as a matter of law, the passage of the USTA automatically put landowners on notice that they should inspect and monitor any underground storage tanks on their property even if, taking the Pflanzes' allegations as true, the former property owners had assured them the tanks were closed and not in use. Perhaps the exercise of ordinary diligence required periodic soil testing or inspection of the tanks in light of Indiana's enactment of the USTA, but that determination cannot be made on the basis of the facts now deployed.

Accordingly, we reverse the trial court's dismissal of this claim and remand for such further examination of it as the parties may place before the court.

**Conclusion**

For the above reasons, we reverse the trial court's order of dismissal and remand the case for further proceedings on the merits.

Dickson, Sullivan, Boehm, Rucker, JJ., concur.

7