**FOR PUBLICATION**



ATTORNEYS FOR APPELLANTS:

**DONN H. WRAY**
**NICHOLAS K. GHAL**
Stewart & Irwin, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
BETTY BENEFIEL:

**DANIEL P. MCINERNY**
**BRYAN H. BABB**
**ALEX C. INTERMILL**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
CHARLES DODSON AND
BETH DODSON:

**KATHERINE L. SHELBY**
**MARGARET M. CHRISTENSEN**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THE PENIEL GROUP, INC. and BEECH GROVE HOLDINGS, LLC, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1201-PL-42 |
| | ) | |
| ELIZABETH BANNON, KENNETH G. SCHAEFER, LINDA A. SCHAEFER, NORMA THINNES, BETTY BENEFIEL, JANET BEELER, CHARLES DODSON and BETH DODSON, | ) | |
| | ) | |
| Appellees. | ) | |

**July 30, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Senior Judge**

STATEMENT OF THE CASE

The Peniel Group, Inc. ("Peniel") and Beech Grove Holdings, Inc. (collectively, "Beech Grove Holdings") appeal the trial court's entry of summary judgment in favor of Betty Benefiel, Kenneth G. and Linda A. Schaefer, Janet Beeler, and Charles and Beth Dodson (collectively, the "Appellees").

We affirm.

ISSUE

Whether the trial court properly granted the Appellees' cross-motions for summary judgment.

FACTS

Churchman Hill Plaza (the "Site") is a commercial retail center located in Beech Grove, Indiana.  From approximately 1969 until 1996, a dry cleaning business, owned and operated by various individuals over that period of time, was one of the tenants at the Site.  In 1981, Churchman Hill Associates obtained title to the Site.

In 1989, the Dodsons formed a partnership with two others called the Four Corners Group.  On June 30, 1989, the partnership purchased the business assets of

2

Speed Queen Fabric Care, the dry cleaning business that operated at the Site, from David and Janet Beeler. The assets purchased from the Beelers included four coin-operated self-service dry cleaning machines, which used the chemical tetrachloroethene ("PCE"), a dry cleaning solvent. The PCE was stored in an above-ground storage tank at the Site.

On two occasions, either Charles Dodson or an employee spilled "a small" quantity of PCE as they were refilling the machines. (App. 118).[1] Concrete basins underneath the machines contained the spills. Occasionally "[s]mall amounts" of PCE leaked from the machines into the concrete basins when the rubber seals on the doors failed. (App. 121). Employees placed used PCE filters in containers before discarding them in a dumpster located at the Site. The partnership ceased using the dry-cleaning machines in 1996 or 1997.

On or about March 7, 1997, ATC Associates, Inc. ("ATC") conducted an environmental site assessment at the Site. Field samples obtained by ATC in the immediate vicinity of the dry cleaning business revealed the presence of the chemicals PCE and trichloroethene ("TCE") in the groundwater and PCE in the soil. ATC opined that "the source of contaminants is the on-site dry cleaner" and "likely related to the dry cleaning process." (App. 193).

ATC conducted a second assessment of the Site in 2000 and again found levels of PCE and TCE in the soil and groundwater. ATC presented its site assessment to Churchman Hill Plaza Associates, the Site's then-owner, on January 27, 2000. In 2001,

---

[1] Citations to the appendix are to Beech Grove Holdings's appendix.

3

LNR Churchman Hill Plaza, LLC, by LNR Partners, Inc., formerly known as Lennar Partners, Inc., purchased the Site.

In June of 2005, Bryan Phillips, as President of Lassiter Development Corporation ("Lassiter") entered into an agreement to purchase the Site from LNR Churchman Hill Plaza, LLC. As part of the sale, Lassiter received copies of the prior environmental assessments conducted at the Site. In September of 2005, Lassiter assigned the agreement for sale to Beech Grove Holdings, Inc., of which Phillips is a member. Peniel, which Phillips had started in 1999 as a real estate development and property management company, managed the Site on behalf of Beech Grove Holdings, Inc.

In 2005, Peniel retained American Environmental Corporation ("AEC") to conduct a third assessment of the Site. The assessment revealed levels of PCE and TCE above default closure levels[2] established by the Indiana Department of Environmental Management ("IDEM") under its Risk Integrated System of Closure ("RISC"), which is a "guidance manual that describes how to achieve consistent closure of contaminated soil and groundwater using existing IDEM programs." http://www.in.gov/idem/4198.htm (last visited June 26, 2012).

In November of 2005, AEC informed IDEM that there had been "[a] release of hazardous substances" at the Site. (App. 462). On or about September 15, 2006, IDEM sent a certified letter to Phillips, "requesting" that Peniel, as "a potentially responsible

---

[2] "'Closure' is IDEMs written recognition that a party has demonstrated attainment of specific investigative of remediation objectives for contaminants in a particular area." http://www.in.gov/idem/files/remediation_closure_guide_sect_01.pdf (last visited June 26, 2012).

4

person," "perform an investigation to characterize the nature and extent of the contamination," as provided by IDEM's RISC and pursuant to Indiana Code section 13-25-4-5. (App. 462).

Subsequently, AEC performed further site investigations at the behest of Peniel and provided its findings to IDEM. The findings again revealed levels of PCE above default closure levels. IDEM, however, did not compel remedial action, and Beech Grove Holdings took no such action.

On November 21, 2008, Beech Grove Holdings filed a complaint against the Appellees[3] pursuant to Indiana Code section 13-30-9-2, which provides:

> A person may, regardless of whether the person caused or contributed to the release of a hazardous substance . . . into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances . . . .

Beech Grove Holdings asserted that the Appellees, "[t]hrough their actions and/or inactions with respect to the chlorinated solvents located on the Site . . . caused and/or contributed to the release of a hazardous substance . . ." at the Site. (App. 36). Accordingly, pursuant to Indiana Code section 13-30-9-3, which provides for the allocation of the "costs of the removal or remedial action in proportion to the acts or omissions of each party" in an environmental legal action, Beech Grove Holdings sought a judgment against the Appellees for all costs related to the PCE and TCE contamination

---

[3] Beech Grove Holdings also named Elizabeth Bannon and Norma Thinnes as defendants. They, however, are not parties to this appeal.

5

of the Site, including, but not limited to, "investigation, assessment, remediation, corrective action, [and] consulting" costs. (App. 37).

The Dodsons filed their answer on February 20, 2009, wherein they denied liability and raised as an affirmative defense that Beech Grove Holdings's claims are barred by the applicable statute of limitations. The Dodsons also filed a cross-claim against their co-defendants.

Benefiel filed her answer on December 4, 2009. Benefiel denied ever operating a dry cleaning business at the Site and therefore asserted that she was not a proper party to either the Dodsons' or Beech Grove Holdings's actions. Benefiel, however, admitted that dry cleaning chemicals were used at the Site. She also raised as an affirmative defense that any claims were barred by the statute of limitations.

On August 11, 2010, Beech Grove Holdings filed a motion for partial summary judgment as to liability only. The Dodsons filed a cross-motion for summary judgment, asserting that the six-year statute of limitations provided by Indiana Code section 34-11-2-7 barred the complaint. The Dodsons argued that the statute of limitations began to run on February 28, 1998, when the Environmental Legal Action ("ELA") statutes found under Article 30 of Title 13 of the Indiana Code became effective. The Dodsons asserted that the claim accrued on that date because Beech Grove Holdings, or its predecessors, discovered, or could have discovered, that the Site had been contaminated prior to the effective date of the ELA. The Dodsons further argued that Beech Grove Holdings failed to designate evidence that the Dodsons "caused or contributed to the release of a

6

hazardous substance <u>into the surface or subsurface soil or groundwater</u> as required by the ELA." (App. 165).

On April 6, 2011, Benefiel filed a response in opposition to Beech Grove Holdings's motion for partial summary judgment. She argued that Beech Grove Holdings failed to designate evidence creating a genuine issue of material fact as to Benefiel's liability. Specifically, Benefiel asserted that "a dispute remains regarding the material fact of whether [she] operated a dry cleaning facility at the Site . . . ." (App. 467). She therefore argued that Beech Grove Holdings had failed to show that she caused or contributed to the release of a hazardous substance.

Subsequently, Benefiel and the Schaefers filed motions to join the Dodsons' cross-motion for summary judgment, which the trial court granted. Thereafter, on June 1, 2011, Beech Grove Holdings filed its response in opposition to the cross-motion for summary judgment. Beech Grove Holdings argued that the ten-year statute of limitations applied to its claim; the accrual date is not the date that the ELA was enacted; and the prior owners' knowledge of hazardous substance contamination, if any, at the Site cannot be imputed to Beech Grove Holdings. As to the Dodsons' liability, Beech Grove Holdings designated evidence in the form of the affidavit of expert witness Audrey Kortz, AEC's vice president, who had never visited the Site but opined that the spills of PCE during the Dodsons' operation of the dry-cleaning business "more likely than not reached the subsurface soil and groundwater at the Site." (App. 499).

7

The Dodsons filed their reply brief in support of their cross-motion for summary judgment on August 4, 2011. Therein, they argued the claim was barred by either a six-year or ten-year statute of limitations because Beech Grove Holdings's "predecessors in interest knew about the contamination since 1997 . . . ." (App. 521). Furthermore, they designated deposition testimony of Kortz and the affidavit of expert witness Andrew Gremos, an environmental consultant who had visited the Site, to refute that they caused or contributed to any contamination of the Site.

The trial court held a hearing on the parties' motions on August 8, 2011. On November 2, 2011, the trial court issued findings of fact and conclusions of law; found that the evidence did not establish that the Dodsons or Benefiel caused or contributed to the contamination of the Site's soil or groundwater; and entered summary judgment in favor of the Appellees.

DECISION

Beech Grove Holdings asserts that the trial court erred in granting summary judgment on the issue of the applicable statute of limitations. When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Landmark Health Care Assocs., L.P. v. Bradbury*, 671 N.E.2d 113, 116 (Ind. 1996).

Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving

8

party deserves judgment as a matter of law. Ind. T.R. 56(C); *Blake v. Calumet Const. Corp.*, 674 N.E.2d 167, 169 (Ind. 1996). "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue." *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 318 (Ind. Ct. App. 1991).

All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996). However, once the movant has carried its initial burden of going forward under Trial Rule 56(C), the nonmovant must come forward with sufficient evidence demonstrating the existence of genuine factual issues, which should be resolved at trial. *Otto v. Park Garden Assocs.*, 612 N.E.2d 135, 138 (Ind. Ct. App. 1993). If the nonmovant fails to meet his burden, and the law is with the movant, summary judgment should be granted. *Id*.

"The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Indiana Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. Ct. App. 2000).

First, Beech Grove Holdings maintains that the trial court's order, granting summary judgment in favor of Benefiel, the Schaefers and Beeler, must be reversed as "the court did not decide the case on the issue of statute of limitations at all" and "failed

9

to show the existence of any factual development that could support summary judgment in favor of these cross-movants." Beech Grove Holdings's Br. at 13. We disagree.

> Where, as here, the trial court makes findings in rendering summary judgment, those findings aid in appellate review, but are not binding on this court. Thus, findings that accompany a grant of summary judgment do not alter the nature of our review. Rather, we will affirm a summary judgment order if it is sustainable upon any theory or basis found in the record.

*Gagan v. Yast*, 966 N.E.2d 177, 184 (Ind. Ct. App. 2012) (internal citations omitted). Thus, the fact that the trial court's findings do not specifically address the statute of limitations issue will not bar this court from determining whether the Appellees are entitled to summary judgment on that basis.

Next, Beech Grove Holdings argues that its claim under the ELA is a contribution action, and therefore, subject to a ten-year statute of limitations pursuant to Indiana Code section 34-11-1-2.[4] Beech Grove Holdings further argues that "[b]ecause a contribution

---

[4] We note that regarding claims brought under Indiana Code section 13-30-9-2, Indiana Code section 34-11-2-11.5 (eff. May 10, 2011) provides:

> (b) Subject to subsections (c), (d), and (e), a person may seek to recover the following in an action brought on or after the effective date of this section under IC 13-30-9-2 or IC 13-23-13-8(b) to recover costs incurred for a removal action, a remedial action, or a corrective action:
>
> (1) The costs incurred not more than ten (10) years before the date the action is brought, even if the person or any other person also incurred costs more than ten (10) years before the date the action is brought.
>
> (2) The costs incurred on or after the date the action is brought.
>
> (c) Costs are eligible for recovery under subsection (b) regardless of whether any part of the costs is incurred before the effective date of this section.

action under the ELA is afforded a 10-year statute of limitation from the first dollar of environmental response costs incurred at the Site," which Beech Grove Holdings contends it incurred in 2005, Beech Grove Holdings asserts that its claim is timely. The Appellees, however, argue that the claim is subject to the six-year statute of limitations pursuant to Indiana Code section 34-11-2-7 as an action for damages against real property.

> Statutes of limitation seek to provide security against stale claims, which in turn promotes judicial efficiency and advances the peace and welfare of society. "The party pleading a statute of limitation bears the burden of proving the suit was commenced beyond the statutory time allowed." When application of a statute of limitation rests on questions of fact, it is generally an issue for a jury to decide.

*Cooper Indus., LLC v. City of S. Bend*, 899 N.E.2d 1274, 1279 (Ind. 2009) (internal citations omitted).

Again, Beech Grove Holdings argues that the ELA is a contribution scheme. Contribution involves the partial reimbursement of one who has discharged a common liability. *Small v. Rogers*, 938 N.E.2d 18, 22 (Ind. Ct. App. 2010). "Discharge" is defined as "[a]ny method by which a legal duty is extinguished; esp., the payment of a

---

(d) This section does not permit a person to revive or raise new claims in an action brought under IC 13-30-9-2 or IC 13-23-13-8(b) that was finally adjudicated or settled before the effective date of this section.

(e) Any person that brought an action under IC 13-30-9-2 or IC 13-23-13-8(b) that was not finally adjudicated or settled prior to the effective date of this section may not amend that action, or bring a new action, under this section.

11

debt or satisfaction of some other obligation." BLACK'S LAW DICTIONARY 495 (8th ed. 2004).

In Indiana, there is a dearth of cases that address the applicable statute of limitations under the ELA. In *Cooper Indus., LLC v. City of South Bend*, 863 N.E.2d 1253, 1256 (Ind. Ct. App. 2007), *trans. granted, opinion vacated,* 878 N.E.2d 219 (Ind. 2007) and *vacated,* 899 N.E.2d 1274 (Ind. 2009), this court addressed whether South Bend's claim under the ELA was time-barred by the general six-year statute of limitations. The court determined that "[n]either Cooper nor the City challenge[d] the trial court's application of Indiana Code section 34–11–2–7, the general statute of limitations for injury to property other than personal property."

Upon transfer, however, the Indiana Supreme Court noted that "[t]he parties disagree over whether South Bend conceded the six-year property damage or the ten-year 'catch-all' statute of limitation applies at trial." *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1286 n.9 (Ind. 2009). Finding that "South Bend's ELA claim would survive under either proposed time period," our supreme court did not address the purported concession, but for the sake of argument, "adopt[ed] six years as the applicable time period."[5] *Id*. at 1286. *Cf. Pflanz v. Foster*, 888 N.E.2d 756, 758 (Ind. 2008) (finding that the parties agreed that the general ten-year statute of limitations applied to

---

[5] Our supreme court did recognize that the USTA provides "only a right of contribution, whereas the ELA does not so limit seeking cost recovery from another party." *Cooper* 899 N.E.2d at 1285. Furthermore, under section six of the ELA, "an action to recover costs related to a release from an underground storage tank may be brought under the ELA or the USTA" but not under both. *See id*. at 1282 (citing Indiana Code section 13-30-9-6).

the contribution claim asserted under Indiana's Underground Storage Tanks Act ("USTA"), which is a separate environmental provision). We therefore look to our federal district court for guidance.

In *Taylor Farm Ltd. Liab. Co. v. Viacom, Inc.*, 234 F. Supp.2d 950 (S.D. Ind. 2002), the district court addressed whether a complaint filed under the ELA is barred by the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), where the defendant Viacom had entered into a court-approved comprehensive settlement agreement with the Environmental Protection Agency ("EPA"), requiring it to clean up hazardous waste at a site that had been operated as a landfill. Viacom argued that the CERCLA's "contribution bar"[6] prevented Taylor from making a contribution claim against it, while Taylor argued that "because it did not contribute in any way to the original contamination," it was not suing Viacom for contribution. 234 F. Supp.2d at 962.

The *Taylor*-court found that the ELA "is not, on its face, a contribution scheme" because it "permits 'any person' to sue to 'recover the reasonable costs of a removal or remedial action.'" *Id*. (citing Indiana Code section 13-30-9-2). *But Cf. Bernstein v. Bankert*, No. 1:08-CV-0427-RLY-DML, 2010 WL 3893121, at *10 (S.D. Ind. Sept. 29, 2010) (citing to *Pflanz*, which, again, addressed the statute of limitations under the USTA not the ELA, in finding that the "ELA contains no provision for limitation of actions;

---

[6] Section 113(f)(2) of CERCLA provides: "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."

therefore, the courts have applied Indiana's ten-year statute of limitations to ELA claims for contribution"). The *Taylor*-court explained that "[c]ontribution is an action among parties who have been found to be liable for at least some portion of the damages alleged in the underlying lawsuit," *id*., and that "[u]nder the common law of contribution, only a defendant in a lawsuit, or a party who has already been found liable in a previous action may bring a claim for contribution." *Id*. at 972.

Here, we agree with the district court holding in *Taylor*. We cannot say that a claim brought under the ELA is a claim for contribution where it allows a plaintiff who is neither liable for the release of a hazardous substance nor has been found liable, to recover the costs of remediation from another party "without regard to the plaintiff's part in causation of the damage."[7] *See Cooper*, 899 N.E.2d at 1285. Accordingly, we find that the ELA is subject to the six-year statute of limitations pursuant to Indiana Code section 34-11-2-7(3) (providing that actions for injuries to real property must be commenced within six years after the cause of action accrues).

Having found that Beech Grove Holdings's claim is subject to a statute of limitations of six years, we now must address whether the claim is timely under Indiana Code section 34-11-2-7.

---

[7] The "plain language" of Indiana Code section 13-30-9 makes it clear that the legislature did not intend the ELA to be a contribution-only statute, where its purpose clearly is meant to "shift the financial burden of environmental remediation to the parties responsible for creating contaminations" as "an incentive for potential [innocent] buyers of contaminated land who might be deterred by the substantial costs to clean up the land, thus preventing not only the cleanup but also redevelopment and economic renewal." *Cooper*, 899 N.E.2d at 1284.

14

> A cause of action accrues under this statute "when a claimant knows, or in the exercise of ordinary diligence should have known of the injury." "The determination of when a cause of action accrues is generally a question of law for the courts to determine. For claims to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has occurred."

*Martin Oil Mktg. Ltd. v. Katzioris*, 908 N.E.2d 1183, 1187 (Ind. Ct. App. 2009) (internal citations omitted), *trans. denied*; *see also Cooper*, 899 N.E.2d at 1286 (stating that under the ELA "the statute of limitation will begin to run on the earlier date of actual discovery or when a reasonable person would discover the facts").

In this case, Beech Grove Holdings filed its complaint on November 21, 2008. Thus, we must determine if Beech Grove Holdings knew of, or reasonably could have discovered, the damage to the Site before November 21, 2002.

Beech Grove Holdings does not quarrel with the general rule of law that "parties are usually held accountable for the time which has run against their predecessors in interest." Beech Grove Holdings's Reply Br. at 6-7. *See Cooper*, 899 N.E.2d at 1279 ("Indiana adheres to the rule that 'third parties are usually held accountable for the time running against their predecessors in interest.'" (quoting *Mack v. Am. Fletcher Nat'l Bank and Trust Co.*, 510 N.E.2d 725, 734 (Ind. Ct. App. 1987), *trans. denied*)). Furthermore, Beech Grove Holdings concedes, and the designated evidence shows, that its predecessors-in-interest discovered or knew of the contamination at the Site as early as 1997. *See* Beech Grove Holdings's Reply Br. at 7.

Beech Grove Holdings, however, would not have had a cause of action until the ELA became effective on February 28, 1998, and therefore, "the statute of limitation could not have begun to accrue until that date" or after that date. *See Cooper*, 899 N.E.2d at 1285. According to the designated evidence, Churchman Hill Associates, the predecessor-in-interest, became aware of the contamination as early as 1997, and certainly no later than 2000, the year ATC prepared a second environmental assessment of the Site on behalf of, and reported the detection of PCE and TCE in soil and groundwater samples to, Churchman Hill Associates. Thus, Beech Grove Holdings's predecessor-in-interest knew of the contamination of the Site for at least eight years before Beech Grove Holdings commenced the action. We therefore find that Beech Grove Holdings is barred from bringing its claim under the ELA. Accordingly, the Appellees are entitled to summary judgment as a matter of law. Because this issue is dispositive, we need not address Beech Grove Holdings's argument that the trial court "erred in finding that no genuine issues of material fact remain regarding whether the Dodsons 'caused or contributed' to the release of the hazardous substance at the Site." Beech Grove Holdings's Br. at 18.

Affirmed.

NAJAM, J., and RILEY, J., concur.

16