FILED

Nov 07 2025, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Shepard Wrex Management, LLC,

*Appellant-Defendant / Counterclaimant,*

v.

The Estate of Betty M. Scott
and Fashion Cleaners, Inc.,

*Appellees-Plaintiff / Counterclaim Defendants.*

November 7, 2025

Court of Appeals Case No.
24A-PL-3069

Appeal from the
Madison Circuit Court

The Honorable
Angela G. Warner Sims, Judge

Trial Court Cause No.
48C01-2002-PL-40

**Opinion by Senior Judge Crone**
Judges Weissmann and Kenworthy concur.

**Crone, Senior Judge.**

# Statement of the Case

This case involves the environmental contamination of property that once contained a dry cleaning business owned by William and Betty Scott (the Scotts).[1] Litigation began when the Scotts filed suit for injunctive relief to obtain access to the property, which is now owned by Shepard Wrex Management LLC, to continue their remediation efforts. Shepard Wrex counterclaimed asserting an Environmental Legal Action, trespass, and criminal trespass. The trial court denied the Scotts' request for an injunction as well as all of Shepard Wrex's counterclaims, and Shepard Wrex now appeals that determination. Concluding that the trial court's judgment is not contrary to law, we affirm its decision.

# Facts and Procedural History

In 1968, William and Betty Scott purchased commercial property ("Property") in Anderson. From 1968 until 2006, they operated a dry cleaning business

---

[1] Both William and Betty have since passed away, and Betty's estate has been substituted as the named party. However, for ease of reference, we will refer to William, Betty, Betty's estate, and Fashion Cleaners collectively as "the Scotts."

known as Fashion Cleaners, Inc. on the Property. In the normal course of their business, the Scotts used a dry cleaning chemical that contained tetrachloroethylene, a chlorinated solvent. At some point during the operation of the Scotts' business, some of this chemical was released on the Property.

[3] In February 2008, a limited subsurface investigation revealed the presence of chemicals, including tetrachloroethylene, in the soil and groundwater at the Property. These findings were reported to the Indiana Department of Environmental Management ("IDEM") in March 2008. IDEM responded by ordering a site investigation to determine the nature and extent of the soil and groundwater contamination.

[4] The Scotts retained HydroTech Environmental Consulting and Engineering to investigate and remediate the contamination. In implementing its remediation plan, HydroTech cooperated with and obtained approval from IDEM. As part of the remediation efforts, an air sparge/soil vapor extraction system ("AS/SVE") was installed on the Property in 2017. However, in November 2019, a storm caused the AS/SVE system to shut down.

[5] In the meantime, Shepard Wrex Management bought the Property at a tax sale and took ownership in early 2019. Shepard Wrex Management LLC was created for the sole purpose of owning a single asset, namely the Property, and Stephen Henshaw is its manager. Thereafter, although the Scotts remained obligated to finalize the environmental cleanup of the Property, Shepard Wrex refused to allow HydroTech or anyone representing the Scotts access to the

Property to continue remediation efforts. As a result, the Scotts filed suit for an injunction in February 2020 seeking access to the Property to restart and operate the AS/SVE system and complete the environmental remediation.

[6] In response, Shepard Wrex counterclaimed asserting an Environmental Legal Action ("ELA"), and claims of trespass and criminal trespass, and requesting a judgment declaring the AS/SVE system to be abandoned by the Scotts. The parties proceeded to a bench trial in July/August 2024, after which the court issued its findings of fact, conclusions thereon, and judgment denying the Scotts' claim for injunctive relief and Shepard Wrex's counterclaims of an ELA, trespass, and criminal trespass. The court granted Shepard Wrex's counterclaim of declaratory judgment. This appeal ensued.

## Issues

[7] Shepard Wrex presents three issues for our review, which we consolidate and restate as:

> I. Whether the trial court erred by denying Shepard Wrex's ELA counterclaim.

> II. Whether the trial court erred by denying Shepard Wrex's counterclaims of trespass.

## Discussion and Decision

[8] The trial court entered findings and conclusions pursuant to Trial Rule 52, and our standard of review in that situation is well settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*RCM Phoenix Partners, LLC v. 2007 E. Meadows, LP*, 118 N.E.3d 756, 759-60 (Ind. Ct. App. 2019) (quoting *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012)).

[9] And because Shepard Wrex did not prevail at trial on its counterclaims, it appeals from a negative judgment. "A negative judgment is a judgment entered against the party who bore the burden of proof at trial." *Universal Auto, LLC v. Murray*, 149 N.E.3d 639, 642 (Ind. Ct. App. 2020).

On appeal from a negative judgment, this Court will reverse the trial court only if the judgment is contrary to law. A judgment is contrary to law if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the prevailing party, together with all reasonable inferences therefrom. We neither reweigh the evidence nor judge the credibility of

witnesses. Further, "[w]hen appealing from a negative judgment, a party has a heavy burden to establish to the satisfaction of the reviewing court that there was no basis in fact for the judgment rendered."

*Burnell v. State*, 56 N.E.3d 1146, 1150 (Ind. 2016) (alteration in original) (citations omitted).

## I. Environmental Legal Action

Shepard Wrex first argues that the trial court erred in its interpretation of the ELA statute. According to Shepard Wrex, an ELA permits recovery of consulting expenses and future remedial costs. Appellant's Br. pp. 38, 25.

The filing of an ELA is permitted by Indiana Code section 13-30-9-2, which provides:

> A person may, regardless of whether the person caused or contributed to the release of a hazardous substance or petroleum into the surface or subsurface soil or groundwater that poses a risk to human health and the environment, bring an environmental legal action against a person that caused or contributed to the release to recover reasonable costs of a removal or remedial action involving the hazardous substances or petroleum.

Under this statute, Shepard Wrex sought to recover both the $25,000 it expended for an assessment and evaluation of the contamination at the Property and the estimated future cost of $1.2 million for remediation based on its proposed plan.

## A. Consulting Expenses

[12] With regard to the $25,000 expense, the trial court denied Shepard Wrex's claim, concluding that "Shepard Wrex has incurred no costs related to the investigation or clean-up of contamination at the Property. The invoices submitted for payments made by Shepard Wrex to EnviroForensics were for consulting work and/or litigation support."[2] Appellant's App. Vol. 2, p. 37 (Conclusion # 23). While Shepard Wrex does not contest the court's conclusion that the $25,000 was merely a consulting expenditure, it asserts that such expenses in developing a remediation plan are compensable under the language of the ELA statute.

[13] As there are no state court cases addressing this specific issue, we turn to a recent federal court decision that involves an ELA claim. Though this precedent is not binding upon us, it is nonetheless instructive to our determination. In *Alvey, et al., v. General Electric Co.*, No. 3:20-cv-00263-MPB-CSW (S.D. Ind. Oct. 30, 2023), the plaintiffs filed suit against GE, alleging that contaminants that were released on GE's property had migrated onto and contaminated their properties. The plaintiffs included ELA claims in their lawsuit, and GE moved for summary judgment arguing that the plaintiffs had no evidence of recoverable cleanup costs. In response, the plaintiffs asserted

---

[2] Shepard Wrex hired EnviroForensics, an environmental consulting firm specializing in the cleanup of dry cleaning facilities. The CEO of EnviroForensics is Stephen Henshaw, who is also the manager of Shepard Wrex.

that they were entitled to recover the cost of environmental consulting services that included reviewing and analyzing documents and developing remedial plans for the contamination.

[14] The court began by applying the general rule under federal law that investigative costs that are incurred after the Environmental Protection Agency ("EPA") has initiated remedial investigation and are not authorized by the EPA are not considered necessary because they are duplicative of the work performed by the agency. *Id.* at *3 (quoting *Rolan v. Atl. Richfield Co.*, No. 1:16-CV-357, at *8 (N.D. Ind. Oct. 22, 2019)). The court then considered these factors: (1) IDEM began investigating the GE site years before the plaintiffs initiated their lawsuit; (2) the plaintiffs' consultants did not begin billing for their services until two years after IDEM and GE had entered an agreed corrective action plan; (3) it did not appear that the consultants' services contributed to the ongoing cleanup efforts; (4) it appeared that the consulting services were secured for litigation purposes and were not necessary to cleanup efforts because their invoices were sent directly to the plaintiffs' counsel; and (5) there was no evidence that IDEM authorized the consulting services. *Alvey*, No. 3:20-cv-00263-MPB-CSW, at *3. Although the remediation process put into place by GE was not substantially completed, there were no facts to support that the plaintiffs had incurred any cleanup costs. The court thus concluded that the plaintiffs' consulting expenses were not recoverable under the ELA statute.

[15] The same analysis and logic apply in this case. IDEM began investigating the Property and working with the Scotts in 2008. The Scotts' environmental expert/consultant, HydroTech, selected the AS/SVE system as the most appropriate remedy for the Property. Ex. Vol. IV, p. 29 (Plaintiff's Ex. 21). And IDEM approved of this corrective action plan, which led to the Scotts' installation and operation of the AS/SVE system on the Property in 2017. *Id.* at 29, 27. It was not until two years later that Shepard Wrex bought the Property and hired EnviroForensics to evaluate the contamination and develop Shepard Wrex's own cleanup plan. There is no evidence that IDEM authorized the expenses for this study by EnviroForensics, and the consulting services appear to be duplicative of the work already performed by IDEM and HydroTech. Further, Shepard Wrex did not bring its ELA counterclaim until 2020 while the Scotts' cleanup efforts were ongoing and substantially completed. *See* Ex. Vol. VI, p. 222 – Ex. Vol. VII, p. 194 (Plaintiff's Ex. 108 – Remediation Completion Report dated June 24, 2021).

[16] The language of the ELA statute shifts the financial burden of *environmental remediation* to the party responsible for creating the contamination. There is no evidence here to show that Shepard Wrex incurred any environmental cleanup costs. Indeed, Shepard Wrex concedes the $25,000 was a consulting expenditure. Accordingly, this amount does not represent a cleanup cost that is to be shifted to the responsible party as provided for in the ELA statute. *See Alvey*, No. 3:20-cv-00263-MPB-CSW, at *4 (stating that purpose of ELA is to shift financial burden of environmental remediation to party responsible for

creating contamination and finding that plaintiffs had not shown they had shouldered any environmental cleanup costs, meaning there was no financial burden to be shifted).  Thus, Shepard Wrex's $25,000 consulting expenses are not costs that are recoverable in an ELA.

## B. Future Cleanup Costs

[17]   The other element of Shepard Wrex's ELA counterclaim is the $1.2 million it seeks to recover for estimated future remediation costs.[3]  The trial court denied Shepard Wrex's claim, concluding that the language of the ELA statute providing that a person may bring an action "to recover reasonable costs of a removal or remedial action" means the recovery of "costs actually incurred." Appellant's App. Vol. 2, p. 37 (Conclusion # 25).  Shepard Wrex alleges that the trial court's interpretation of the term "recover" in the ELA statute is erroneous.

[18]   "The goal of statutory construction is to determine, give effect to, and implement the legislature's intent."  *Indiana Off. of Util. Consumer Couns. v. Citizens Wastewater of Westfield, LLC*, 177 N.E.3d 449, 457 (Ind. Ct. App. 2021), *trans. denied*.  The best evidence of legislative intent is the language of the statute

---

[3] Shepard Wrex's estimated future remediation cost of $1.2 million is based on achieving an unrestricted closure of the Property so that Shepard Wrex can develop it for residential use.  Tr. Vol. II, p. 181.  The term "closure" is used to indicate that a contamination site has been cleaned up and that the exposure risk to human health and the environment has been abated.  *Id.* at 177.  There are two types of closure:  unrestricted and restricted.  *Id.* at 177-78.  As these designations suggest, an unrestricted closure has little to no limit on the future use of the property.  A restricted closure, on the other hand, limits the future use of the property.  In accordance with IDEM's approval, the Scotts substantially completed a restricted closure of the Property.

itself, and all words must be given their plain, ordinary, and usual meaning. *Id.* at 457-58 (quoting *219 Kenwood Holdings, LLC v. Props. 2006, LLC*, 19 N.E.3d 342, 343 (Ind. Ct. App. 2014)).

[19] Citing Black's Law Dictionary, Shepard Wrex argues that the word "recover" in the ELA statute means to obtain relief, a judgment, or damages, which can include the resources to undertake remedial steps. Appellant's Br. p. 26. It asserts that if the General Assembly had wanted to define the term as the trial court did here, it would have used the word "reimburse." *Id.*

[20] We decline Shepard Wrex's invitation to set aside the plain language of the statute and apply a technical meaning instead. It is well settled that when we determine legislative intent, we assign the words used in a statute their plain and ordinary meaning and not a technical or limited meaning. *Ind. State Highway Comm'n v. Ziliak*, 428 N.E.2d 275, 279 (Ind. Ct. App. 1981). Consequently, we generally avoid legal or other specialized dictionaries and turn instead to general language dictionaries. *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019). To that end, we observe that the Merriam-Webster Dictionary defines "recover" as to get back or regain. https://www.merriam-webster.com/dictionary/recover (last visited October 31, 2025). Similarly, the American Heritage Dictionary defines "recover" as to get back. https://www.ahdictionary.com/word/search.html?q=recover (last visited October 31, 2025).

[21]     Shepard Wrex's assertion that the General Assembly purposefully chose the broad term "recover" instead of a more limited term like "reimburse" is similarly unavailing. Our legislature enacted Section 13-30-9-2 (the ELA statute) and then also enacted Section 34-11-2-11.5, establishing the statute of limitation for bringing an ELA. Specifically, Subsection 34-11-2-11.5(b) states that in an ELA, a person may seek "to recover costs *incurred* for a removal action, a remedial action, or a corrective action[.]" (Emphasis added).

[22]     Further, in settling the question whether Section 34-11-2-11.5 sets forth the limitations period for an ELA, this Court instructed that "a cause of action for the recovery of cleanup costs [under the ELA] does not accrue until a cleanup cost has been *incurred*." *Elkhart Foundry & Mach. Co., Inc. v. City of Elkhart Redevelopment Comm'n for City of Elkhart*, 112 N.E.3d 1123, 1128 (Ind. Ct. App. 2018) (emphasis added), *trans. denied*. Decisions in the federal courts align with this reading of the ELA as well. In *Hostetler v. Johnson Controls Inc.*, No. 3:15-CV-226 JD (N.D. Ind. Sept. 30, 2021), the defendant moved for summary judgment on the plaintiffs' ELA claim, arguing that the plaintiffs had not incurred any costs for removal or remediation actions. In concluding that the defendant was entitled to summary judgment, the court stated that Section 34-11-2-11.5(b) affirms the principle that the ELA statute requires "that costs for removal action, etc. be *incurred* before the lawsuit is filed." *Id.* at *9 (emphasis added).

[23]     Finally, we are also guided by long-standing principles of the American legal system where "demonstrated harm is an indispensable element of virtually

every type of civil claim." *Pflanz v. Foster*, 888 N.E.2d 756, 758 (Ind. 2008). Accordingly, "a claimant cannot recover a monetary judgment unless he has suffered actual damage." *Id.* "The law does not usually permit monetary recovery for claims solely involving future damages; rather, some damage must have already begun to occur." *Id.*

Thus, Shepard Wrex's claim for $1.2 million is not recoverable under the ELA statute because this amount represents estimated future costs rather than costs actually incurred by Shepard Wrex for removal or remediation. Having determined such, we need not address Shepard Wrex's argument that their plan is reasonable under the ELA statute.

In sum, Shepard Wrex has not shown that the evidence points unerringly to a conclusion opposite that reached by the trial court. Accordingly, the judgment denying Shepard Wrex's ELA counterclaim is not contrary to law.

## II. Trespass

### A. Civil

Shepard Wrex next asserts that the trial court erroneously denied its counterclaim of civil trespass. A trespass is "'an unlawful interference with one's person, property, or rights.'" *TDM Farms, Inc. of N. Carolina v. Wilhoite Fam. Farm, LLC*, 969 N.E.2d 97, 109 (Ind. Ct. App. 2012) (quoting *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 937 n.15 (Ind. Ct. App. 1999)). In its counterclaim, Shepard Wrex alleged that the Scotts have a duty to remove the AS/SVE system from the Property but have refused to do so,

thereby committing trespass.  Appellant's App. Vol. 2, pp. 67-68 (Amended Counterclaim); *see also* Appellant's Br. p. 42.

[27]   In concluding that the Scotts did not commit trespass, the trial court correctly noted that the Scotts placed the AS/SVE system on the Property at the time they owned the Property.  Appellant's App. Vol. 2, p. 38 (Conclusion # 28). The undisputed facts further show that the AS/SVE system was still on the Property and functioning when Shepard Wrex bought the Property in 2019 at a tax sale.  When Shepard Wrex purchased the Property, it was aware there was an active remediation system in place.  Tr. Vol. II, p. 128.  Stated another way, Shepard Wrex purchased the Property in an "as is" condition and cannot now be heard to complain about such condition.  Moreover, Shepard Wrex presented no evidence of or basis for a duty owed by the Scotts to remove the system from the Property.

[28]   Thus, Shepard Wrex has not shown that the evidence points unerringly to a conclusion opposite that reached by the trial court.  The judgment denying Shepard Wrex's counterclaim for civil trespass is not contrary to law.

### B. Criminal Trespass

[29]   Shepard Wrex also alleged that the Scotts committed criminal trespass under Indiana Code section 35-43-2-2, for which it sought treble damages and attorney fees under Indiana Code section 34-24-3-1.  *See* Ind. Code § 35-43-2-2 (b)(4) (providing that "a person who knowingly or intentionally interferes with the possession or use of the property of another person without the person's

consent" commits criminal trespass); *see also* Ind. Code § 34-24-3-1 (authorizing trial courts to award treble civil damages and attorney fees where party suffers pecuniary loss as result of criminal trespass).

[30] Our focus here is the requirement that a criminal trespass be knowing and intentional. "'It has long been the law in this state, as well as of many other states, that the penal statute relating to criminal trespass was not designed to try disputed rights in real estate, but such law was intended to punish those who willfully and without a bona fide claim of right commit acts of trespass on the lands of others.'" *Jones v. Von Hollow Ass'n, Inc.*, 103 N.E.3d 667, 674 (Ind. Ct. App. 2018) (quoting *Myers v. State*, 130 N.E. 116, 117 (Ind. 1921)); *see also Hughes v. State*, 2 N.E. 956, 958 (Ind. 1885) ("the machinery of the criminal law cannot be properly invoked for the redress of merely private grievances"). This case is an example of such an attempt to invoke criminal law for the redress of a private real estate dispute between two parties.

[31] Furthermore, if a party has a fair and reasonable foundation for believing that it has a right to be present on the property, there is no criminal trespass. *Curtis v. State*, 58 N.E.3d 992, 994 (Ind. Ct. App. 2016). Here, during their ownership of the Property, the Scotts had the AS/SVE system installed in order to perform remediation as approved and required by IDEM. The system was still in operation on the Property when Shepard Wrex bought the Property at a tax sale. As the Scotts are obligated to complete the remediation process in accordance with their IDEM-approved plan and reasonably desire to do so using the system they installed for that purpose, they held a good faith belief

that they could and should leave the system on the Property and continue operating it for remediation purposes.

[32] Shepard Wrex has made no effort to demonstrate the criminal intent necessary for a criminal trespass, which is the foundation for its effort to obtain treble damages and attorney fees pursuant to Section 34-24-3-1. Accordingly, Shepard Wrex has not shown that the evidence points unerringly to a conclusion opposite that reached by the trial court. The judgment denying Shepard Wrex's counterclaim for criminal trespass and treble damages is not contrary to law.

## Conclusion

[33] Based on the foregoing, we conclude that the trial court's judgment denying Shepard Wrex's counterclaims for an ELA, civil trespass, criminal trespass, and treble damages is not contrary to law and should be affirmed.

[34] Affirmed.

Weissmann, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANT

David L. Guevara
Vivek R. Hadley
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Maggie L. Smith

Darren A. Craig
Frost Brown Todd LLP
Indianapolis, Indiana

Glenn D. Bowman
Stoll Keenon Ogden PLLC
Indianapolis, Indiana