FILED

Aug 22 2016, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Douglas M. Curtis, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 22, 2016 <br><br> Court of Appeals Cause No. <br> 49A02-1512-CR-2293 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Jeffrey Mendes, Pro Tem Judge <br><br> Trial Court Cause No. <br> 49G08-1506-CM-22260 |

**Barnes, Judge.**

## Case Summary

[1] Douglas Curtis appeals his conviction for Class A misdemeanor criminal trespass. We reverse.

## Issue

The issue before us is whether there is sufficient evidence to sustain Curtis's conviction.

## Facts

Curtis lived with his father, Michael, in Michael's apartment in the Nora Commons on the Monon ("Nora Commons") complex in Indianapolis. Because Nora Commons is a complex for residents fifty-five years old and older, Curtis could not be a tenant there. In 2010, Curtis executed a "Live-In Attendant" agreement that permitted him to live in Michael's apartment to allow Michael to live independently. Ex. A. However, Nora Commons's policy was that such an agreement had to be re-executed annually whenever a lease was renewed and attached to the lease. Curtis had never renewed the agreement, and none was attached to the most recent lease Michael had executed.

Cathy Neff is the property manager of the Nora Commons complex. On June 24, 2015, Neff learned that Curtis had resold books stolen from the Nora Commons library to a secondhand bookstore. On that same date, Neff prepared a written "No Trespass Notice" and hand-delivered it to Curtis, barring him from the Nora Commons premises. Ex. 1. Neff told Curtis when giving him the notice, "I will give you 48 hours and to get anything out if you need to or make arrangements with your father . . . ." Tr. p. 24. Shortly after Neff gave Curtis the no trespass notice, several Nora Commons residents

approached Neff and told her Curtis was removing some electronic equipment from the complex's community room, which they believed did not belong to Curtis. Neff then contacted police, who arrived on the scene approximately twenty minutes after Neff had given the no trespass notice to Curtis. Police arrested Curtis for criminal trespass. There is no evidence Curtis was ever arrested or charged for any attempted theft of electronic equipment from the community room; Curtis claimed the equipment was a PA system he had loaned to the complex.

[5] The State charged Curtis with Class A misdemeanor criminal trespass. After a bench trial, Curtis was convicted as charged. Curtis now appeals.

## Analysis

[6] Curtis contends there is insufficient evidence to support his conviction for criminal trespass. When reviewing a claim of insufficient evidence we neither reweigh the evidence nor judge the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). We will consider only the evidence and reasonable inferences therefrom that support the conviction. *Id.* We will affirm if there is probative evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.*

[7] The State charged Curtis under Indiana Code Section 35-43-2-2(b)(1), which provides that a person commits Class A misdemeanor criminal trespass if, "not having a contractual interest in the property, [that person] knowingly or intentionally enters the real property of another person after having been denied

entry by the other person or that person's agent . . . ." However, there is no evidence here that Curtis left the Nora Commons premises and then re-entered the premises after being given the no trespass notice by Neff. Rather, it appears he never left the property before police arrived on the scene and arrested him. If anything, this factual scenario would fall under Indiana Code Section 35-43-2-2(b)(2), which provides that a person commits Class A misdemeanor criminal trespass if, "not having a contractual interest in the property, [that person] knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent . . . ."

[8] Under the criminal trespass statute, "the element of communication of denial of entry or request to leave necessarily implies a reasonable period of time for the person receiving that communication to leave of her/his own volition."[1] *Lemon v. State*, 868 N.E.2d 1190, 1196-97 (Ind. Ct. App. 2007). If a person is not given a reasonable period of time to comply with a request to leave, then there is no trespass. *Id.* Moreover, "[t]he criminal trespass statute's purpose is to punish those who wilfully or without a bona fide claim of right commit acts of trespass on the land of another." *Woods v. State*, 703 N.E.2d 1115, 1117–18 (Ind. Ct. App. 1998) (citing *Myers v. State*, 190 Ind. 269, 273, 130 N.E. 116, 117 (1921)).

---

[1] Curtis argues in part that he had a contractual interest in the property because he claims he had been living at Nora Commons with his father for several years with Nora Commons's consent. We need not address that issue. Instead, we reverse Curtis's conviction based upon his argument that Neff had provided him with a forty-eight-hour grace period to remove his property from the Nora Commons premises.

An act of criminal trespass requires a mens rea of at least knowingly; "[a] person engages in conduct 'knowingly' if, when he engages in conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). As such, if a person has a fair and reasonable foundation for believing that he or she has a right to be present on the property, there is no criminal trespass. *See Olsen v. State*, 663 N.E.2d 1194, 1196 (Ind. Ct. App. 1996).

[9] At trial, Neff testified that she told Curtis he had forty-eight hours to remove any of his property from the Nora Commons premises. More specifically, Neff testified, "I said he had 48 hours to allow him to get his belongings out if he had anything that belonged to him." Tr. p. 24. She subsequently clarified that she told Curtis, "I will give you 48 hours and to get anything out if you need to or make arrangements with your father . . . ." *Id.* Neff changed her mind about allowing Curtis forty-eight hours to remove his belongings when other residents approached her and claimed Curtis was attempting to steal electronic equipment from the complex's community room. However, there is no evidence Neff told Curtis that she was rescinding the forty-eight hour grace period; instead, she called police and Curtis was arrested for trespassing, approximately twenty minutes after Neff had given the no trespass notice to Curtis.

[10] The trial court seemed to find, and the State argues on appeal, that Neff both told Curtis to leave the premises immediately, and that he could return within the next forty-eight hours to remove his personal property or alternatively arrange to have his property removed and delivered to him with his father's

assistance. We conclude that a person in Curtis's position, being told he or she had forty-eight hours to somehow remove his personal property from the premises, would reasonably believe he or she had permission to remain on or re-enter the premises at any time during the next forty-eight hours. Indeed, Curtis testified that when police arrived, he was in the process of loading his car with his personal property; there is no evidence to contradict this testimony. Furthermore, Neff did not tell Curtis that he *had* to immediately leave and/or that he *had* to arrange through his father to get his personal property, rather than removing the property himself. There also is no evidence that Curtis attempted to dispute Neff's no trespass order or indicated that he would refuse to leave. In sum, there is insufficient evidence Curtis had the necessary mens rea to have committed criminal trespass.[2]

# Conclusion

[11] There is insufficient evidence to sustain Curtis's conviction for Class A misdemeanor criminal trespass. We reverse.

[12] Reversed.

---

[2] Additionally, if Curtis had in fact been attempting to steal property after being given the no trespass notice, theft or attempted theft is the charge he should have faced, but the State made no effort to prove that crime. That conduct, even if it had occurred and was illegal, cannot form a basis for the trespass conviction. *See Woods*, 703 N.E.2d at 1117–18 (holding defendant who had right to be on property but created disturbance on the premises was not guilty of criminal trespass and noting State could have charged defendant with disorderly conduct but did not).

Riley, J., and Bailey, J., concur.

[13]