# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Taylor-Price
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Kalen Posley,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 5, 2019

Court of Appeals Case No.
19A-CR-838

Appeal from the Marion Superior Court

The Honorable David Hooper, Magistrate

Trial Court Cause No.
49G08-1809-CM-31998

**Bradford, Judge.**

# Case Summary

In August of 2018, Kalen Posley attempted to gain admission into Tiki Bob's Cantina, claiming that he had paid the cover charge earlier that evening. After he was denied admission, Posley blocked the entrance of Tiki Bob's and began yelling and cursing at the staff working security. Indianapolis Metropolitan Police Officer Timothy Elliott, who was working off-duty security for Tiki Bob's that evening, requested that Posley stop, a request with which Posley did not comply. Although Posley eventually left, he returned later and began yelling at the Tiki Bob's staff again, which led to his arrest. In March of 2019, Posley was convicted of Class A misdemeanor criminal trespass and Class B misdemeanor disorderly conduct. Posley contends that the State produced insufficient evidence to sustain his convictions. We affirm.

# Facts and Procedural History

On August 31, 2018, Posley went to Tiki Bob's, an Indianapolis bar, and requested admission, claiming that he had already paid the ten-dollar cover charge earlier that evening. Tiki Bob's general manager John Hahn was working the front door entrance and requested to see Posley's stamp, which would have been given to him upon payment of the cover charge. Posley did not have a stamp and, as a result, he was denied admission. Posley began demanding that he receive a ten-dollar refund or be admitted to the bar. Posley was blocking the entrance of the bar, preventing other patrons from entering and was also "very loud and boisterous and yelling and cursing towards the

security staff, the guy that checks the [photo identification] and Mr. Hahn[.]" Tr. p. 8. Hahn motioned for Officer Elliott to come to the entrance and help defuse the situation. As Officer Elliott approached Posley, he could hear Posley "distinctly over everybody else." *Id*. Posley was cursing and yelling so loudly that it was heard by Officer Elliott over the music coming from inside Tiki Bob's and caused persons walking on the sidewalks to stop and watch. Once Officer Elliott arrived at the entrance of Tiki Bob's, Posley continued to yell and curse. Officer Elliott asked Posley several times to stop, but he refused. Eventually, Posley left Tiki Bob's.

[3]     Later that evening, Posley returned to Tiki Bob's and began leaning on the nylon ropes that formed a barrier outside the bar's entrance. Posley began "cursing, yelling and basically being belligerent." Tr. p. 14. Upon observing Posley's conduct, Officer Elliott and another officer arrested him.

[4]     On September 21, 2018, the State charged Posley with two counts of Class A misdemeanor criminal trespass and one count of Class B misdemeanor disorderly conduct. On March 18, 2019, a bench trial was held. At the conclusion of the State's presentation of evidence, Posley moved for dismissal of all counts pursuant to Indiana Trial Rule 41(b). The trial court dismissed one count of criminal trespass and denied Posley's motion on the remaining counts. The trial court found Posley guilty of Class A misdemeanor criminal trespass and Class B misdemeanor disorderly conduct and sentenced him to an aggregate sentence of 365 days with 357 days suspended.

# Discussion and Decision

[5] Posley contends that the State presented insufficient evidence to sustain his convictions. When reviewing the sufficiency of evidence to support a conviction, we consider only probative evidence and reasonable inferences supporting the factfinder's decision. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), *trans. denied*. It is the role of the factfinder, not ours, to assess witness credibility and weigh the evidence. *Id.* We will affirm a conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.*

# I. Criminal Trespass

[6] Posley contends that the evidence is insufficient to sustain his criminal-trespass conviction, specifically that it does not establish that he had the required *mens rea*. To convict Posley of criminal trespass, the State was required to prove that he knowingly or intentionally interfered with the possession or use of Tiki Bob's property without its consent. Ind. Code § 35-43-2-2(b)(4). "A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a) (internal quotations omitted). "A person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b) (internal quotations omitted). "Intent is a mental state, and the trier of fact often must infer its existence from surrounding circumstances when determining

whether the requisite intent exists." *Goodner v. State*, 685 N.E.2d 1058, 1062 (Ind. 1997).

[7]     We conclude that there is sufficient evidence to sustain Posley's criminal-trespass conviction. The record indicates that Posley was yelling and cursing at the Tiki Bob's staff members at such a loud volume that it caused persons passing by on the sidewalks to stop and watch the confrontation and that it was heard by Officer Elliott distinctively over everyone else in the area. It further indicates that Posley was blocking the entrance which prohibited any other patrons from being admitted to Tiki Bob's because security was unable to check their photo identifications or allow them to enter. Posley testified that Hahn had requested that he leave the premises. Given the record, a reasonable factfinder could conclude that Posley, at a minimum, was aware of the high probability that his conduct was interfering with Tiki Bob's use of its property without consent.

[8]     Posley argues that because he paid the ten-dollar coverage charge, he had a fair and reasonable foundation for believing that he had a right to be present at Tiki Bob's. *See Curtis v. State*, 58 N.E.3d 992, 994 (Ind. Ct. App. 2016) ("[I]f a person has a fair and reasonable foundation for believing that he or she has a right to be present on the property, there is no criminal trespass."). Posley's own testimony, however, is the only evidence that indicates that he paid the cover charge that evening, which the trial court was not required to believe and apparently did not. Posley's argument is merely an invitation for us to reweigh

the evidence and judge witness credibility, which we will not do. *Young*, 973 N.E.2d at 1226.

# II. Disorderly Conduct

[9] Posley contends that the State presented insufficient evidence to sustain his disorderly-conduct conviction. To convict Posley of disorderly conduct, the State was required to prove that Posley recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind. Code § 35-45-1-3(a)(2). Specifically, Posley contends that he never received a specific command to stop making unreasonable noise.

[10] We conclude that there is sufficient evidence to sustain Posley's disorderly-conduct conviction. Officer Elliott testified as follows:

> Q: So, you walked up to the defendant and can you describe how he was at that time?
> A: He was very loud and boisterous and yelling and cursing towards the security staff, the guy that checks the ideas [*sic*] and Mr. Hahn himself. He was standing at the front door of the entrance, which was roped off with barricades, nylon rope and a metal guard and they also had a front patio that has metal bars on it as well.
> Q: When you say that he was loud, would you say that the was unreasonably loud? Was he—
> A: So loud that I could hear him distinctly over everybody else. On Thursday night and Friday morning, there's several hundreds and thousands of people downtown with music playing and everything else. I was still able to hear his voice.
> Q: Did he draw attention?
> A: He did.

Q: About how many people would you say were attracted to the situation?

A: I can't give you an approximate number. I know the line at the time stemmed from the door and went all the way down to almost 247 Meridian at Taps and Dolls, plus the patrons that are walking on the sidewalk going both north and south bound all stopped. The business and people coming into the business all stopped and watched Mr. Posley and his interaction.

Q: So, this halted the normal operation of the bar that night?

A: Yes, sir.

Q: Did you ask him to stop?

A: Yes, sir.

Q: And at that time, did he stop?

A: No, sir.

Tr. pp. 8–9. Officer Elliott testified that Posley was unreasonably loud to the point that he could be heard over the hundreds of other persons in the area and the loud music playing in Tiki Bob's. Moreover, Officer Elliott testified that Posley's yelling and cursing drew the attention of patrons waiting in line and persons passing by on the sidewalk. Finally, Officer Elliott testified that he asked Posley to stop, a request with which Posley did not comply. The trial court was entitled to credit this testimony and did. The State produced sufficient evidence to sustain Posley's convictions.

[11]    The judgment of the trial court is affirmed.

Vaidik, C.J., and Riley, J., concur.